269 F.3d 78 (2nd Cir. 2001)
 DAVID APARICIO, Petitioner-Appellant-Cross-Appellee,
v.
CHRISTOPHER ARTUZ, Superintendent, Green Haven Corr. Facility, Respondent-Appellee-Cross-Appellant.
 No. 00-2350
 UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
 June 7, 2001, Argued
October 5, 2001, Decided
Amended October 30, 2001.
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted][Copyrighted Material Omitted][Copyrighted Material Omitted][Copyrighted Material Omitted][Copyrighted Material Omitted]
 DONNA R. NEWMAN, New York, NY, for Petitioner-Appellant-Cross-Appellee.
 PHYLLIS MINTZ, District Attorney's Office Kings County, Brooklyn, NY, (Leonard Joblove, on the brief) for Respondent-Appellee-Cross-Appellant.
 Before: McLAUGHLIN, CABRANES, Circuit Judges, and COTE, District Judge.*
 McLAUGHLIN, Circuit Judge:
 
 BACKGROUND
 
 1
 This case arises out of a short-lived crime spree on the morning of January 29, 1991. Around daybreak, Carlos Medina was riding the subway through Brooklyn, when another passenger tried to rob him at gunpoint. A New York City Transit Police officer happened upon the crime in progress and attempted to intervene; the gunman fired four shots, hitting the police officer twice. At the next stop, the gunman fled the subway.
 
 
 2
 Immediately thereafter, near the same subway station, car service driver David Ramos was warming up his vehicle when he was held up at gunpoint and his car was hijacked. Ramos rushed to the car service's office to tell his dispatcher and both men chased the carjacker in the dispatcher's vehicle. They located the carjacker just a few blocks away, marooned in New York City morning traffic. When they finally pulled alongside the stolen vehicle, the carjacker pointed a gun at them, jumped out of the car and ran toward a nearby house. About two hours later, the police found Petitioner David Aparicio cowering under a stairway in the backyard of a house a few blocks away. No gun was recovered.
 
 
 3
 At the request of the police, Ramos then came to the scene and identified a handcuffed Aparicio as the person who stole his car. Later that day, Medina and another witness picked Aparicio out of a lineup, identifying him as the perpetrator of the subway robbery and the shooting.
 
 
 4
 . The State Proceeding
 
 
 5
 Aparicio was charged with attempted murder in the first degree and assault in the first degree in connection with the shooting of the police officer; attempted robbery in the first degree of the subway passenger; robbery in the first degree (based on the car theft); and criminal possession of a weapon in the second or, alternatively, third degree.
 
 
 6
 At his trial, Aparicio did not call any witnesses or present other evidence on his behalf. Rather, he asserted a misidentification defense, arguing that the police had arrested and the witnesses had identified the wrong person.
 
 In its charge, the court instructed:
 
 7
 Before a person may be convicted of a crime by a verdict of a jury the evidence must establish to the jury's satisfaction, beyond a reasonable doubt, each and every element of the crime and that the defendant on trial is the person who committed the crime.
 
 
 8
 The court then charged the jury on the elements of each of the offenses, repeatedly reminding the jury that the State was required to prove that the defendant was the person who committed each element. At the conclusion of the jury charge, Aparicio's counsel did not object to any aspect of the charge or request any further instructions.
 
 
 9
 Aparicio was convicted of robbery in the first degree in violation of N.Y. Penal Law 160.15(4), and criminal possession of a weapon in the second degree in violation of N.Y. Penal Law 265.03(2). He was acquitted of the attempted murder charge, and the jury failed to reach a verdict on assault or attempted robbery charges. Adjudicated a persistent felony offender, Aparicio was sentenced to a term of twenty-five years to life imprisonment for the first degree robbery offense and a concurrent term of eight years to life imprisonment on the weapons possession count.
 
 
 10
 On direct appeal to the Appellate Division, Aparicio raised a number of issues, including a contention that, in a trial where identification was the core issue, the court's failure to deliver a thorough eyewitness identification charge deprived him of a fair trial. The Appellate Division affirmed the convictions, ruling that Petitioner's claim concerning the identification instruction was unpreserved for appellate review, and, even if it were preserved, was meritless because the jury charge was adequate in this respect. People v. Aparicio, 208 A.D.2d 638, 618 N.Y.S.2d 246 (2d Dep't 1994). Petitioner's petition to appeal to the New York Court of Appeals was denied in December 1994. People v. Aparicio, 84 N.Y.2d 1009, 622 N.Y.S.2d 920, 647 N.E.2d 126 (1994).
 
 
 11
 . The Federal Proceeding
 
 
 12
 In April 1997, Aparicio filed a pro se petition for a writ of habeas corpus in the United States District Court for the Eastern District of New York (Weinstein, J.), raising the same claims he previously presented to the Appellate Division. In November 1998, Petitioner filed a supplemental habeas brief (this time with the assistance of counsel) claiming that he was denied effective assistance of trial counsel when his lawyer failed to request a specific eyewitness identification charge or object to the trial court's failure to deliver one. Petitioner also contended that his appellate counsel was equally ineffective for failing to raise the ineffectiveness of his trial counsel.
 
 
 13
 Because the ineffective assistance claims had never been raised in state court, the district court stayed the habeas petition (rather than dismissing it under Rose v. Lundy, 455 U.S. 509, 510, 71 L. Ed. 2d 379, 102 S. Ct. 1198 (1982), for containing unexhausted claims) pending state court review of those claims. In May 1999, Petitioner returned to state court, filing a pro se motion for a writ of error coram nobis from the Appellate Division. There he raised for the first time in state court the ineffectiveness of both his trial and appellate counsel with regard to the identification instruction.[1] The following September, Petitioner amended his coram nobis petition to add a claim that his appellate counsel was ineffective for failing to raise a claim that his convictions for first-degree robbery and second-degree criminal weapons possession violated the Double Jeopardy Clause of the Fifth Amendment.[2] His argument was that his indictment was multiplicitous because, when both convictions arose out of the same nucleus of facts, the weapons possession charge was a lesser included offense of the robbery count. The Appellate Division denied coram nobis relief that October, stating only, "appellant has failed to establish that he was denied the effective assistance of appellate counsel." People v. Aparicio, 265 A.D.2d 335, 696 N.Y.S.2d 697 (2d Dep't 1999). Notably, the Appellate Division did not mention Petitioner's claim of ineffective assistance of trial counsel with regard to the eyewitness identification charge.
 
 
 14
 Having concluded that he had now exhausted his state remedies, Aparicio resuscitated his federal habeas petition in the district court. The amended habeas petition yoked together four claims: (1) ineffective assistance of trial counsel for failing to request the eyewitness identification instruction; (2) ineffective assistance of appellate counsel for failing to raise claim (1) on direct appeal; (3) ineffective assistance of trial counsel for failing to object to the indictment on double jeopardy grounds; and (4) ineffective assistance of appellate counsel for failing to raise claim (3) on direct appeal.
 
 
 15
 The last two double jeopardy claims (3 & 4) were not exactly the same claims that Aparicio had presented to the Appellate Division in the state coram nobis proceeding. In the amendment to his coram nobis petition, Petitioner argued only that appellate counsel was ineffective for failing to raise double jeopardy on direct appeal. He did not attack trial counsel.[3] Thus, the third claim had never been raised in state court, and the fourth claim mischaracterized the argument that was actually presented. Nevertheless, the State did not raise any objection to the presentation of the double jeopardy claims. The district court thus addressed the merits of all four claims, granting the petition in part, and denying it in part. Aparicio v. Artuz, No. CV-97-2183(JBW), 2000 WL 713744 (E.D.N.Y. May 25, 2000).
 
 
 16
 The district court granted the petition on the double jeopardy claim, finding that criminal weapons possession in the second degree was a lesser included offense of robbery in the first degree and that the jury's verdict left open the possibility that both offenses had their genesis in the same factual nucleus--the robbery of the car service driver. Id. at *3-5. Conceding that the requirement that the weapon be both loaded and operable was an element of the weapon possession offense but was not an element of the robbery offense, the district court, nevertheless, found a violation of the Double Jeopardy Clause. Under New York law, it is an affirmative defense to first degree robbery that the firearm was not loaded or operable. Id. at *3; N.Y. Penal Law 160.15(4). Therefore, the district court concluded that Petitioner's trial counsel was, "at the very least, . . . constitutionally ineffective . . . not to request that the court clearly instruct the jury as to which time frame the weapons possession count involved." Id. at *5. Furthermore, the district court deemed appellate counsel to be ineffective for failing to raise the ineffectiveness of Petitioner's trial counsel on direct appeal. Id. at *5.
 
 
 17
 As to the eyewitness identification instruction, the district court denied the habeas petition, concluding that there was no error in the jury charge, and thus trial counsel could not be ineffective for failing to raise so meritless an issue. A fortiori, appellate counsel was not ineffective for failing to raise an argument that trial counsel was ineffective. Therefore, the district court vacated only the criminal weapons possession conviction (and its sentence of 8 years to life imprisonment), leaving the robbery conviction (and its sentence of 25 years to life imprisonment) intact.
 
 
 18
 The district court granted a certificate of appealability on the partial denial of Aparicio's petition solely on the identification instruction issue. Petitioner now appeals pursuant to that certification. The State cross-appeals from the district court's partial grant of the petition on the double jeopardy ineffective assistance claims.[4]
 
 DISCUSSION
 
 19
 We review a district court's denial of a habeas petition de novo. E.g., Boyette v. Lefevre, 246 F.3d 76, 88 (2d Cir. 2001).
 
 I. Timeliness; Applicability of AEDPA
 
 20
 The enactment of Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, created a tumultuous sea change in federal habeas review, especially affecting the petitions of state prisoners. Williams v. Taylor, 529 U.S. 362, 402-10, 146 L. Ed. 2d 389, 120 S. Ct. 1495 (2000) (O'Connor, J., writing for the majority with respect to part II); Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001). Nevertheless, the parties--both below and in this Court--have proceeded with Olympian indifference to this five-year old statute.
 
 
 21
 Among other things, AEDPA established a statute of limitations on habeas filings: one year, running from the date the petitioner's conviction became final (unless the petition relies on new Supreme Court case law or unavoidably undiscovered facts). 28 U.S.C. 2244(d)(1)(A). Aparicio's conviction became final in December 1994, when his petition for leave to appeal to the New York Court of Appeals was denied. Thus, when AEDPA became effective on April 24, 1996, the statute of limitations on Aparicio's habeas claims had, on its face, already run. Undaunted, Aparicio filed his habeas petition exactly one year later, on April 24, 1997.
 
 
 22
 In an unrelated case, this Court sensed the palpable injustice of AEDPA's suddenly slamming the door on countless unfiled habeas claims. We therefore created a one-year grace period, running from AEDPA's effective date. Ross v. Artuz, 150 F.3d 97, 103 (2d Cir. 1998). Filing his petition on April 24, 1997, the first anniversary of AEDPA, Aparicio eked into the grace period. Although his petition is thus timely, he remains subject to the arcane jurisprudence of habeas corpus and AEDPA, particularly to that statute's more deferential standard of review of state court determinations of prisoners' constitutional claims. Lindh v. Murphy, 521 U.S. 320, 327-29, 138 L. Ed. 2d 481, 117 S. Ct. 2059 (1997) (finding that AEDPA's amendments to 2253, 2254 & 2255 applied to cases filed after the effective date); Loliscio v. Goord, 263 F.3d 178, 183-85 (2d Cir. Aug. 30, 2001) (applying AEDPA standards to 2254 petition timely filed after AEDPA's effective date, but within Ross v. Artuz grace period).
 
 
 23
 II. Procedural Default of Petitioner's Trial Counsel Claims
 
 
 24
 We turn to consider one of the State's principal contentions: that both of Petitioner's claims of ineffective assistance of trial counsel are procedurally defaulted and thus barred from federal habeas review.
 
 
 25
 If anything is settled in habeas corpus jurisprudence, it is that a federal court may not grant the habeas petition of a state prisoner "unless it appears that the applicant has exhausted the remedies available in the courts of the State; or that there is either an absence of available State corrective process; or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. 2254(b)(1). To satisfy 2254's exhaustion requirement, a petitioner must present the substance of "the same federal constitutional claims that he now urges upon the federal courts," Turner v. Artuz, 262 F.3d 118, 123-24 (2d Cir. Aug. 13, 2001), "to the highest court in the pertinent state, " Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990).
 
 
 26
 When a claim has never been presented to a state court, a federal court may theoretically find that there is an "absence of available State corrective process" under 2254(b)(1)(B)(i) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile. In such a case the habeas court theoretically has the power to deem the claim exhausted. Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997). This apparent salve, however, proves to be cold comfort to most petitioners because it has been held that when "the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," federal habeas courts also must deem the claims procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 735 n.1, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991).
 
 
 27
 We have recently observed that dismissal of a habeas claim on the ground that it was procedurally defaulted "differs crucially" from a dismissal for failure to exhaust state remedies. Turner, 262 F.3d at 122. Dismissal for a procedural default is regarded as a disposition of the habeas claim on the merits. This means that any future presentation of the claim would be a second or successive habeas petition, requiring authorization by this Court pursuant to 28 U.S.C. 2244(b)(3)(A). Id. (citing Carter v. United States, 150 F.3d 202, 205-06 (2d Cir. 1998)). For a procedurally defaulted claim to escape this fate, the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent). Coleman, 501 U.S. at 748-50 (1991).
 
 
 28
 This procedural default doctrine and its attendant "cause and prejudice" standard are grounded in our concerns for federalism and comity between the state and federal sovereigns. Id. at 730, 111 S. Ct. 2546. It ensures that federal courts respect the "States' interest in correcting their own mistakes." Id. at 732, 111 S. Ct. 2546. The doctrine applies whether the default occurred at trial, on appeal or on state collateral review. Murray v. Carrier, 477 U.S. 478, 490-92, 91 L. Ed. 2d 397, 106 S. Ct. 2639 (1986).
 
 
 29
 Upon examination of each of Petitioner's ineffective assistance of trial counsel claims, we conclude that although each claim is exhausted, each was also procedurally defaulted by Aparicio's failure to raise the issue on direct appeal in the state court. And because Petitioner cannot present a sufficient cause to excuse these procedural defaults, both ineffective assistance of trial counsel claims are barred from federal review.
 
 
 30
 A. Ineffective Assistance of Trial Counsel--Double Jeopardy
 
 
 31
 As discussed above, see supra, at 87 & n.2, this claim was never fairly presented to a state court for review. The State argues that this claim is unexhausted and, therefore, Aparicio's petition should be dismissed in its entirety for being a "mixed" petition containing both exhausted and unexhausted claims. Rose, 455 U.S. at 510 (1982).[5] We believe it is doubtful, though, that any avenue remains open to Aparicio in state court, and thus that the "absence of available State corrective process" renders this claim exhausted. 28 U.S.C. 2254(b)(1)(B)(i).
 
 
 32
 Petitioner was entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals, both of which he pursued long ago. N.Y. Crim. Proc. Law 450.10(1); N.Y. Court R. 500.10(a).New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal. N.Y. Crim. Proc. Law 440.10(2)(c). The nagging question here is whether Petitioner's failure to assert ineffective assistance of trial counsel (concerning the double jeopardy issue) might be forgiven under 440.10 because of the ineffective assistance of Petitioner's appellate counsel.
 
 
 33
 Given the Appellate Division's determination in the coram nobis proceeding that Petitioner "failed to establish that he was denied effective assistance of appellate counsel," People v. Aparicio, 696 N.Y.S.2d at 697, we are persuaded that it is most unlikely that another state court would suddenly find the performance of Petitioner's appellate counsel to be so ineffective as to justify Petitioner's failure to include this ineffective assistance of trial counsel claim in his direct appeal. Thus, any state court to which Petitioner might now present this claim would almost certainly find it procedurally barred. Because requiring a petitioner to seek additional state court review when the "results have effectively been predetermined," Castille v. Peoples, 489 U.S. 346, 350, 103 L. Ed. 2d 380, 109 S. Ct. 1056 (1989), is inconsistent with the purposes of 2254(b), we deem this particular claim exhausted.
 
 
 34
 Of course, even though the claim is exhausted, it is still procedurally defaulted under Coleman. 501 U.S. at 735. That procedural default can only be cured by a showing of cause for the default plus prejudice, or a showing of actual innocence. Id. at 748-49, 111 S. Ct. 2546. And, of course, just as in our imagined state court proceeding, the only cause Aparicio can offer for the procedural default would be the ineffective assistance of his appellate counsel.
 
 
 35
 A defense counsel's ineffectiveness in failing to properly preserve a claim for review in state court can suffice to establish cause for a procedural default only when the counsel's ineptitude rises to the level of a violation of a defendant's Sixth Amendment right to counsel. Edwards v. Carpenter, 529 U.S. 446, 451, 146 L. Ed. 2d 518, 120 S. Ct. 1587 (2000); Murray, 477 U.S. at 488-89. "In other words, ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim." Edwards, 529 U.S. at 451.
 
 
 36
 Our holding later in this opinion that Petitioner's double jeopardy claim is without merit, see infra, at 98 & n.10, in conjunction with the Supreme Court's holdings in Carrier and Edwards, compels us to conclude that Petitioner has not presented an adequate cause for his procedural default here. Thus, we are--and the district court was--precluded from reaching the merits of this claim.
 
 
 37
 B. Ineffective Assistance of Trial Counsel--Identification Charge
 
 
 38
 In stark contrast to the double jeopardy claim, Petitioner did raise, in his coram nobis petition to the Appellate Division, the ineffectiveness of his trial counsel for failing to request an eyewitness identification instruction. See supra, at 86 & n.1. However, the Appellate Division did not explicitly address this claim, writing only, "appellant has failed to establish that he was denied effective assistance of appellate counsel." Aparicio, 696 N.Y.S.2d at 697. Although the trial counsel claim was not explicitly addressed, it was, as a technical matter, adjudicated; the Appellate Division denied Aparicio's coram nobis application. Id. Thus, this claim is exhausted. Picard v. Connor, 404 U.S. 270, 275, 30 L. Ed. 2d 438, 92 S. Ct. 509 (1971).[6]
 
 
 39
 Although this claim is admittedly exhausted, it is nonetheless procedurally barred because the state court rejected it on an adequate and independent state procedural ground. Coleman, 501 U.S. at 730. In Harris v. Reed, 489 U.S. 255, 103 L. Ed. 2d 308, 109 S. Ct. 1038 (1989), the Supreme Court announced what became known as the "clear statement" rule: that federal habeas review will not be precluded unless the state court "clearly and expressly stated that its judgment rests on a state procedural bar." Id. at 263, 109 S. Ct. 1038 (internal quotation marks and citations omitted). However, in Coleman, the Supreme Court backed away from the "clear statement" principle, holding it was an essential predicate to the Harris presumption that the state court decision on petitioner's claims be grounded in substantive federal law. Coleman, 501 U.S. at 735. Coleman thus recast the clear statement rule, holding that when the state court's decision "fairly appeared to rest primarily on resolution of [the petitioner's federal] claims or to be interwoven with those claims, and did not clearly and expressly rely on an adequate and independent state ground, a federal court may address the petition." Id. In the absence of such a reliance on federal law, the Harris presumption of reviewability evaporates and "federal habeas courts must ascertain for themselves if the petitioner is in custody pursuant to a state court judgment that rests on independent and adequate state grounds. " Coleman, 501 U.S. at 736.
 
 
 40
 Making that determination here is a vexing challenge, given the dearth of information in the state court decision. Not only did the Appellate Division not explicitly discuss Petitioner's ineffective assistance of trial counsel claim, it did not even acknowledge its existence. Explicating Petitioner's claim, the state court wrote, "Application by appellant for a writ of error coram nobis to vacate, on the ground of ineffective assistance of appellate counsel, a decision and order of this court . . . ." Aparicio, 696 N.Y.S.2d at 697 (emphasis added). With regard to Petitioner's trial counsel claim, we are left with, in essence, a one-word decision: "denied."
 
 
 41
 Faced with a spate of similar summary denials, this Court, interpreting Coleman, held that the Harris presumption did not apply to such denials without opinion "unless there is 'good reason to question whether there is an independent and adequate state ground for the decision.'" Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993) (quoting Coleman, 501 U.S. at 739).
 
 
 42
 Here, there can be no doubt that the state court's decision on Petitioner's trial counsel claim rested on an adequate and independent state bar: Aparicio never raised ineffective assistance of trial counsel in his direct appeal. As we discussed above, see supra, at 90, New York law prohibits review of a claim on collateral review when the defendant unjustifiably fails to raise the claim on direct appeal. N.Y. Crim. Proc. Law 440.10(2)(c). The Appellate Division's conclusion on coram nobis that Aparicio was not denied effective assistance of appellate counsel disposed of Aparicio's only proffered cause for the failure to raise the trial counsel claim on direct appeal. The Appellate Division's decision concerning Aparicio's trial counsel claim thus had to rest on a state procedural bar; under New York law, the decision could not possibly rest on any other ground.
 
 
 43
 Petitioner's trial counsel claim, then, can only be reviewed on federal habeas if he satisfies the cause and prejudice standard of Coleman. And, similar to the double jeopardy claim, our later conclusion that the performance of Petitioner's appellate counsel in this regard was not so deficient as to violate Petitioner's Sixth Amendment rights, see infra, at 99-100 & n.11, serves to reject the only cause Petitioner presented for the default. This claim is also thus barred from federal review.
 
 III. Standards of Review Under AEDPA
 
 44
 Having established that only Aparicio's claims of ineffective assistance of appellate counsel survive for federal review, we must lay out AEDPA's governing standards.
 
 
 45
 Under the AEDPA regime, once a state court has adjudicated a petitioner's claim on the merits, a federal court may not grant a habeas petition on that claim unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. 2254(d)(1). The necessary predicate to this deferential review is, of course, that petitioner's federal claim has been "adjudicated on the merits" by the state court. If a state court has not adjudicated the claim "on the merits," we apply the pre-AEDPA standards, and review de novo the state court disposition of the petitioner's federal constitutional claims. Washington v. Schriver, 255 F.3d 45, 55 (2d Cir. 2001).
 
 
 46
 This Court recently held that for purposes of AEDPA, a state court "adjudicates" a petitioner's federal constitutional claims "on the merits" whenever "it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). To determine whether a state court has disposed of a claim on the merits, we consider: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." Id. at 314 (quoting Mercadel v. Cain, 179 F.3d 271, 274 (5th Cir. 1999)) (internal quotation marks omitted). So, to invoke the deferential standards of AEDPA, the state court need only dispose of the petitioner's federal claim on substantive grounds, and reduce that disposition to judgment. No further articulation of its rationale or elucidation of its reasoning process is required. Id. at 312.
 
 
 47
 Applying this test here, we conclude that Aparicio's claims of ineffective assistance of appellate counsel were "adjudicated on the merits" by the Appellate Division. Although it denied Aparicio coram nobis relief without mentioning the Sixth Amendment or relevant case law,[7] there is nothing in its decision to indicate that the claims were decided on anything but substantive grounds. Thus, because his claims have been "adjudicated on the merits" by a state court, we must review that decision under AEDPA's deferential standards.
 
 
 48
 IV. Applying AEDPA to Petitioner's Ineffective Assistance of Appellate Counsel Claims
 
 A. AEDPA Standard of Review
 
 49
 When, as in this case, a state court fails to explicate a coherent rationale for its rejection of a petitioner's claim, but that rejection nevertheless is clearly on the merits, the federal court must "focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent." Id. at 311-12 (citing Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000), cert. denied sub nom., Bell v. Beck, __ U.S.__, 122 S. Ct. 74, __ L.Ed.2d __ (2001)).
 
 
 50
 A state court decision slips into the "unreasonable application" zone "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. The Supreme Court has thus far offered little guidance as to the meaning of the term "unreasonable application," somewhat tautologically instructing federal habeas courts to ask whether the state court's application of federal law was objectively unreasonable. Id. at 409, 120 S. Ct. 1495.
 
 
 51
 Significantly, however, the Supreme Court did caution that "an unreasonable application of federal law is different from an incorrect or erroneous application of federal law." Id. at 412, 120 S. Ct. 1495 (emphasis in original). In short, a federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently. The state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable. Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000). However, "the increment need not be great; otherwise, habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" Id. (quoting Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 889 (3d Cir. 1999) (en banc)).
 
 B. Constitutional Principles
 
 52
 The Sixth Amendment commands that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. When an appeal is authorized, states must provide indigents with counsel for their first appeal as of right. Douglas v. California, 372 U.S. 353, 358, 9 L. Ed. 2d 811, 83 S. Ct. 814 (1963). This right to counsel requires more than ensuring that counsel appears on the defendant's behalf. "The right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14, 25 L. Ed. 2d 763, 90 S. Ct. 1441 (1970).
 
 
 53
 Occasionally, the performance of defense counsel is so dismal that it ripens into the deprivation of counsel altogether and potentially violates the defendant's Sixth Amendment rights. To prevail on such a claim, Petitioner must show, not only that his counsel's representation was fundamentally defective, but also that, but for the counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Although it was born in the context of ineffective assistance of trial counsel, Strickland's two-prong test applies equally to claims of ineffective assistance of appellate counsel on a defendant's first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 396-97, 83 L. Ed. 2d 821, 105 S. Ct. 830 (1985).
 
 
 54
 The Strickland standard, then, is the relevant "clearly established Federal law, as determined by the Supreme Court of the United States" in this case. We must ensure that it was not unreasonably applied by the Appellate Division. 28 U.S.C. 2254(d)(1).[8]
 
 
 55
 As to the first prong of the Strickland test--deficient performance--it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument. Counsel is not obliged to advance every nonfrivolous argument that could be made. Evitts, 469 U.S. at 394; Jones, 463 U.S. at 754 (1983). Strickland installed no rigid requirements; it created only an "objective standard of reasonableness" for the assessment of attorney performance. 466 U.S. at 688. In making that assessment, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and be watchful "to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689.
 
 
 56
 To satisfy the second, prejudice prong, the defendant must show that there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal. Id.
 
 
 57
 Applying the "objective[]" standard promulgated by Williams, 529 U.S. at 409, we hold that the Appellate Division did not unreasonably apply the Strickland test to either of Petitioner's two ineffective assistance of appellate counsel claims.
 
 C. Double Jeopardy Claim
 
 58
 In his amended coram nobis petition, Aparicio claimed that his appellate counsel was ineffective for failing to argue that his indictment was multiplicitous and thus violated the constitutional prohibition against double jeopardy because second-degree possession of a firearm is a lesser included offense of first-degree robbery. This was the only double jeopardy claim properly before the district court.[9] Thus, under AEDPA, we must now decide whether the Appellate Division unreasonably applied the Strickland standard by ruling that the failure of Aparicio's counsel to raise the double jeopardy argument on direct appeal did not rise to the level of ineffective assistance of appellate counsel. We hold that it did not.
 
 
 59
 It is well-settled constitutional law that the constitutional protection against double jeopardy is a personal right and, like other constitutional rights, can be waived if it is not timely interposed at trial. United States v. Papadakis, 802 F.2d 618, 621 (2d Cir. 1986); Paul v. Henderson, 698 F.2d 589, 592 (2d Cir. 1983); United States v. Perez, 565 F.2d 1227, 1232 (2d Cir. 1977). Thus, in New York, a defendant generally cannot assert a constitutional double jeopardy argument on appeal unless it was raised prior to the entry of the judgment of conviction. People v. LaRuffa, 37 N.Y.2d 58, 60-61, 371 N.Y.S.2d 434, 332 N.E.2d 312 (1976) ("The constitutional immunity from double jeopardy is a personal right which if not timely interposed at trial may be waived."); cf. People v. Addison, 73 A.D.2d 790, 423 N.Y.S.2d 707, 708 (4th Dep't 1979) (holding that defendant had preserved constitutional double jeopardy argument for appeal by raising the objection prior to sentencing, although after the verdict); see also N.Y. Crim. Proc. Law 210.20(2) (requiring that motions to dismiss or reduce an indictment because the prosecution is barred by New York's statutory protection against double jeopardy be brought within forty-five days of arraignment); People v. Dean, 74 N.Y.2d 643, 644, 542 N.Y.S.2d 512, 540 N.E.2d 707 (1989) (failure to move for relief authorized by 210.20 within specified time frame constitutes waiver of any ground that could have been raised under that section).
 
 
 60
 Aparicio did not raise his double jeopardy argument at his trial in 1994. Therefore, any efforts by Petitioner's appellate counsel to make this argument would have been futile because the argument had already been waived by trial counsel's failure to raise the objection.
 
 
 61
 The Fifth Amendment's prohibition on double jeopardy protects persons from being punished twice for a single criminal offense. U.S. Const. amend. V.; Brown v. Ohio, 432 U.S. 161, 165, 53 L. Ed. 2d 187, 97 S. Ct. 2221 (1977). When a defendant has violated two separate criminal statutes, the protection against double jeopardy is implicated when both statutes prohibit the same offense or when one offense is a lesser included offense of the other. Rutledge v. United States, 517 U.S. 292, 297, 134 L. Ed. 2d 419, 116 S. Ct. 1241 (1996). In making this assessment, the touchstone is whether the legislature intended to authorize separate punishments for the offensive conduct under separate statutes. United States v. Chacko, 169 F.3d 140, 146 (2d Cir. 1999). The fact that both offenses arise out of a single criminal transaction is not dispositive. The critical question is "whether the 'offense'--in the legal sense, as defined by [the legislature]--complained of in one count is the same as that charged in another." Id. (citing Hudson v. United States, 522 U.S. 93, 107, 139 L. Ed. 2d 450, 118 S. Ct. 488 (1997) (Stevens, J., concurring in the judgment); United States v. Dixon, 509 U.S. 688, 704, 125 L. Ed. 2d 556, 113 S. Ct. 2849 (1993)).
 
 
 62
 For almost seventy years, we have applied the test set out in Blockburger v. United States, 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180 (1932), to determine whether two statutes proscribe the "same" offense: "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id. at 304, 52 S. Ct. 180. We also employ the Blockburger analysis to determine when one offense is a lesser included offense of another. Rutledge, 517 U.S. at 297. To be "same" offense under Blockburger, "the relationship of the two offenses [must be] like that of concentric circles rather than overlapping circles." 4 Wayne R. LaFave et al., Criminal Procedure 17.4(b) (2d ed. 1999). If the two statutes each require proof of a fact that the other does not, then "there are two offenses, and it is presumed that the legislature intended to authorize prosecution and punishment under both." United States v. Khalil, 214 F.3d 111, 118 (2d Cir. 2000).
 
 
 63
 The elements of robbery in the first degree are: (1) forcible stealing of property; and (2) "in the course of the commission of the crime or immediate flight therefrom, he . . . displays what appears to be a [firearm]." N.Y. Penal Law 160.15(4). However, it is a affirmative defense to first-degree robbery to show that the firearm was not loaded or was otherwise inoperable. Id. If the defendant proves this fact (by a preponderance of the evidence), the offense drops to robbery in the second degree. Id.
 
 
 64
 The elements of criminal possession of a weapon in the second degree are: (1) possession of a firearm; (2) that is loaded and operable; and (3) with intent to use it unlawfully against another. N.Y. Penal Law 265.03(2); People v. Longshore, 86 N.Y.2d 851, 852, 633 N.Y.S.2d 475, 657 N.E.2d 496 (1995) ("Although the statute is silent on the point, it is now accepted that to establish criminal possession of a handgun the People must prove that the weapon is operable"); People v. Cavines, 70 N.Y.2d 882, 883, 524 N.Y.S.2d 178, 518 N.E.2d 1170 (1987) (holding evidence that gun and ammunition were operable was sufficient to support conviction under 265.03(2)); People v. Aponte, 249 A.D.2d 553, 673 N.Y.S.2d 148, 150 (2d Dep't 1998) (reversing conviction under 265.03(2) because trial court did not charge the jury on the element of operabililty).
 
 
 65
 Filtering these two statutes through the Blockburger sieve, it is plain that each offense "requires proof of a fact that the other does not." Blockburger, 284 U.S. and 304. To convict a defendant of robbery, the State must prove forcible stealing, which obviously need not be established in a firearm possession case. Conversely, to convict on the firearm possession charge, the State must prove that the firearm was loaded and operable, while that is not required in a first degree robbery case. The circles overlap; one does not fit wholly within the other. Thus, Blockburger dictates that the two offenses are different and Petitioner's conviction under each statute does not subject him to double jeopardy. C.f. Chacko, 169 F.3d at 148 (holding making false statements on a loan application was not a lesser included offense of bank fraud even when both charges arose out a single loan application; bank fraud requires proof of a "scheme or artifice," while false statement offense required proof that false statement be made to obtain a loan or advance); United States v. Bryant, 326 U.S. App. D.C. 114, 117 F.3d 1464, 1468-69 (D.C. Cir. 1997) (holding offense of making false statements to federal official was not a lesser included offense of impersonating a federal official even when both charges arose out of defendant's single utterance that he was a U.S. Marshall; impersonation statute required the defendant's misrepresentation be used for obtaining a benefit, while false statement offense requires the offending misrepresentation to be made within the jurisdiction of the United States Government).
 
 
 66
 Petitioner argues that this semantic analysis is too facile and loses the forest for the trees. Petitioner claims that because non-operability of the firearm is an affirmative defense to first-degree robbery, the State, must, as a practical matter, prove the all the elements of the firearm possession offense to get a first-degree robbery conviction. Thus, the argument goes, prosecutors can tack on a second-degree firearm possession charge to every first-degree robbery case, inflicting the evil that the Double Jeopardy clause prohibits: two punishments for a single criminal offense without explicit legislative authorization.
 
 
 67
 This argument, while it has some visceral appeal, overlooks some fundamental differences between elements of offenses and affirmative defenses thereto. Affirmative defenses are complete defenses that, once proven by the defendant by a preponderance of the evidence, negate criminal liability for an offense, notwithstanding that the State has otherwise proven all the elements of that offense beyond a reasonable doubt.
 
 
 68
 A few critical distinctions must be noted: First, the burden of proof for all affirmative defenses lies squarely with the defendant. N.Y. Penal Law 25.00(2). Second, affirmative defenses need be proven only by a preponderance of the evidence, id.; elements must be proven beyond a reasonable doubt. Third, and most importantly, unless the defendant asserts the affirmative defense, the State need not negate it to obtain a conviction; it is not one of the facts upon which criminal liability is predicated. Thus, Petitioner's argument that a second-degree firearm possession charge can be tacked on to every first-degree robbery case is demonstrably false: if, for example, the state possessed no evidence whatsoever that a gun used in a robbery was loaded, it could obtain a conviction on a first-degree robbery charge, but not on a second-degree firearm possession charge.
 
 
 69
 For these reasons, we have never conflated an affirmative defense as the functional equivalent of an element of an offense, even when, as here, an element of the crime and the affirmative defense "overlap in the sense that evidence to prove the latter will often tend to negate the former." Martin v. Ohio, 480 U.S. 228, 234, 94 L. Ed. 2d 267, 107 S. Ct. 1098 (1987) (holding that placement of burden of proof for self-defense affirmative defense to aggravated murder on defendant did not unconstitutionally shift the burden of proof of any element of the offense to defendant); United States v. Thompson, 76 F.3d 442, 453 (2d Cir. 1996) (holding same with regard to "false testimony" affirmative defense to federal witness tampering offense); United States v. Johnson, 968 F.2d 208, 213-14 (2d Cir. 1992) (same as Thompson).
 
 
 70
 We conclude, therefore, that Petitioner was not subjected to double jeopardy by his prosecution and conviction for both first-degree robbery and second-degree criminal weapon possession. And because Petitioner's double jeopardy claim was, at bottom, meritless, the Appellate Division did not unreasonably apply the Strickland standard in holding that Petitioner had not been denied the effective assistance of appellate counsel on this claim. The failure to include a meritless argument does not fall outside the "wide range of professionally competent assistance" to which Petitioner was entitled.[10] Jameson v. Coughlin, 22 F.3d 427, 429-30 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690).
 
 
 71
 D. Eyewitness Identification Instruction Claim
 
 
 72
 Finally, we turn to Petitioner's argument that his appellate counsel was ineffective for failing to raise the argument that his trial counsel was ineffective for not requesting a cautionary instruction on eyewitness testimony. Under AEDPA, we inquire only whether the Appellate Division's rejection of this claim amounted to an unreasonable application of the Strickland standard. 28 U.S.C. 2254(d)(1). For reasons similar to those that support our rejection of Petitioner's double jeopardy claim, we hold that the Appellate Division's decision was not the product of an unreasonable application of Strickland.
 
 
 73
 Generally, this Court has concluded that counsel's failure to object to a jury instruction (or to request an additional instruction) constitutes unreasonably deficient performance only when the trial court's instruction contained "clear and previously identified errors." Bloomer v. United States, 162 F.3d 187, 193 (2d Cir. 1998); see also McKee v. United States, 167 F.3d 103, 108 (2d Cir. 1999). Conversely, when a trial court's instruction is legally correct as given, the failure to request an additional instruction does not constitute deficient performance. United States v. Brooks, 82 F.3d 50, 54 (2d Cir. 1996); United States v. Javino, 960 F.2d 1137, 1145 (2d Cir. 1992).
 
 
 74
 The New York Court of Appeals has held that, although expanded identification instructions are preferable, especially when there is a close question of identity, the failure to give such an instruction does not constitute reversible error. People v. Whalen, 59 N.Y.2d 273, 278-279, 464 N.Y.S.2d 454, 451 N.E.2d 212 (1983); People v. Love, 244 A.D.2d 431, 664 N.Y.S.2d 91, 92 (2d Dep't 1997). A trial judge who gives a "general instruction on weighing witnesses' credibility and who states that identification must be proven beyond a reasonable doubt has made an accurate statement of the law." Whalen, 59 N.Y.2d at 279. The decision whether or not to give an expanded instruction is left in the sound discretion of the trial judge.People v. Knight, 87 N.Y.2d 873, 874, 638 N.Y.S.2d 938, 662 N.E.2d 256 (1995).
 
 
 75
 Measured against these standards, the trial court's decision not to include an additional cautionary instruction on eyewitness testimony was not erroneous. The charge instructed the jury to assess the credibility of the witnesses. Furthermore, the trial judge repeatedly instructed the jury that they had to conclude beyond a reasonable doubt that the defendant was the perpetrator of every element of an offense before they could convict. Thus, the charge sufficed as "an accurate statement of the law." Whalen, 59 N.Y.2d at 279. Because, under the circumstances, the jury instructions were not improper, the failure of Petitioner's trial counsel to object or request an additional instruction was not objectively unreasonable. Brooks, 82 F.3d at 54. And, just as in our disposition of Petitioner's double jeopardy claim, Petitioner's appellate counsel was not ineffective for failing to raise the meritless argument.[11] Jameson, 22 F.3d at 429-30. Under AEDPA, the Appellate Division did not unreasonably apply the Strickland standard in rejecting this claim.
 
 CONCLUSION
 
 76
 We have considered all the parties' remaining contentions and find them to be without merit. For the foregoing reasons, we AFFIRM the decision of the district court insofar as it denied in part Petitioner's habeas application, and REVERSE the decision insofar as it granted the habeas application in part and vacated the conviction for criminal possession of a firearm in the second degree. This case is REMANDED to the district court with instructions that Petitioner's habeas application be denied in its entirety.
 
 
 77
 SO ORDERED.
 
 
 
 Notes:
 
 
 *
 The Honorable Denise Cote, United States District Court Judge for the Southern District of New York, sitting by designation.
 
 
 [1]
 This is a point of some controversy. The State argues that Petitioner attacked only his appellate counsel in his coram nobis petition. It is understandable why the State might be perplexed.
 Coram nobis, an ancient common law writ, has been largely superseded by the motion to vacate a judgment. N.Y. Crim. Proc. Law 440.10 (2001). Coram nobis remains available as remedy only in those situations not explicitly covered by 440.10. N.Y. Crim. Proc. Law 440.10, Commentary, Peter Preiser (McKinney's 1994). Thus far, its use has been sanctioned by the Court of Appeals only in the context of ineffective assistance of appellate counsel. People v. Bachert, 69 N.Y.2d 593, 599, 516 N.Y.S.2d 623, 509 N.E.2d 318 (1987).
 Here, Petitioner's pro se coram nobis petition was a form document, designed for the writ's usual purpose: challenging ineffective assistance of appellate counsel. However, even a cursory reading shows that he challenged effectiveness of both his trial and appellate counsel. Whether the Appellate Division could properly have entertained an ineffective assistance of trial counsel claim in a coram nobis proceeding, see People v. Gordon, 183 A.D.2d 915, 584 N.Y.S.2d 318, 318 (2d Dep't 1992) ("coram nobis lies in [the state appellate court] only to vacate an order determining an appeal on the ground that defendant was deprived of ineffective assistance of appellate counsel."), is a question entirely different from whether Aparicio raised the claim in state court.
 
 
 [2]
 Muddying the procedural quagmire, the double jeopardy amendment attacked only his appellate counsel, and not trial counsel. The relevant portion of Petitioner's amendment states:
 That appellate counsel's failure to raise claim that; [sic] prosecution for first-degree robbery, and, second-degree criminal possession of a weapon, arose from the same criminal incident. As a result petitioner's constitutionally protected rights against double jeopardy of State and Federal Constition [sic] was [sic] violated.
 
 
 [3]
 See supra, at 87 & n.2.
 
 
 [4]
 The State does not need a certificate of appealability to appeal the order of a district court in a habeas proceeding under 28 U.S.C. 2254. Fed. R. App. P. 22(b)(3).
 
 
 [5]
 The vitality of the bright-line rule of Rose is in doubt. This Court recently acknowledged that "AEDPA warrants some adjustment in the pre-AEDPA requirement of Rose v. Lundy." Zarvela v. Artuz, 254 F.3d 374, 380 (2d Cir. 2001). In Zarvela, we stated that when a federal habeas court is presented with a mixed petition, and when outright dismissal would jeopardize the timeliness of the collateral attack, the proper course is to stay the exhausted claims, dismiss the unexhausted claims, and allow the petitioner to amend his petition once the claims have been exhausted in the state courts. Id. However, such a stay ordinarily should be conditioned on the petitioner's beginning the state court proceeding within 30 days of the stay, and renewing the federal habeas action within 30 days of concluding the state proceeding. Id. at 381-82. Furthermore, AEDPA permits a habeas court to reject a claim on the merits notwithstanding the fact that it is unexhausted. 28 U.S.C. 2254 (b)(2). However, there exists no complementary power to grant a habeas petition on an unexhausted claim.
 
 
 [6]
 New York provides that a defendant shall have only one request for leave to appeal to the New York Court of Appeals. N.Y. Court R. 500.10(a). Thus, by presenting this claim to the Appellate Division, Petitioner presented it, for exhaustion purposes, to the state's highest court.
 
 
 [7]
 The Appellate Division did cite Jones v. Barnes, 463 U.S. 750, 754, 77 L. Ed. 2d 987, 103 S. Ct. 3308 (1983), as authority for its holding. Jones held that the Ninth Circuit had erred by introducing a per se rule that an appointed appellate counsel must raise every nonfrivolous issue requested by the client lest he be found to have rendered ineffective assistance. Jones, 463 U.S. at 754. Jones, of course, is inapposite to Petitioner's claims. There is nothing in the record to indicate that Aparicio requested his appointed appellate attorney to pursue certain arguments or that the attorney, in turn, ignored those requests.
 
 
 [8]
 It is beyond cavil that the Strickland standard qualifies as "clearly established Federal law." Williams, 529 U.S. at 391 (2000). For AEDPA purposes, a petitioner is not required to further demonstrate that his particular theory of ineffective assistance of counsel is also "clearly established." Id.; Sellan, 261 F.3d at 309,.
 
 
 [9]
 Crucially, Aparicio's amended coram nobis petition did not claim that appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel, nor did it raise the trial counsel issue directly. See supra, at 87 & n.2. Unless these claims were exhausted, the district court would not have jurisdiction to grant a habeas petition. 28 U.S.C. 2254(b)(1)(A) & (2). While these claims could be deemed exhausted through Aparicio's procedural default, unless he can show cause and prejudice, or demonstrate actual innocence, these claims are barred from federal review.
 
 
 [10]
 This conclusion also rebuts any contention that the ineffectiveness of Petitioner's appellate counsel is adequate cause to excuse the procedural default of the claim that trial counsel was ineffective for failing to raise the double jeopardy claim. See supra, at 91. Because the double jeopardy claim was meritless, Petitioner's trial counsel was not ineffective for failing to raise it. And thus, Petitioner's appellate counsel was not ineffective for failing to raise the ineffectiveness of trial counsel. Under Edwards, ineffective assistance can establish cause for a procedural default only if it is itself a valid constitutional claim. Edwards, 529 U.S. at 451.
 
 
 [11]
 Also similar to our disposition of the double jeopardy claim, this conclusion forecloses the possibility that the ineffectiveness of Petitioner's appellate counsel can constitute cause for the procedural default of the claim that trial counsel was ineffective for failing to request an additional instruction. Edwards, 529 U.S. at 451. See supra, at 92.