**UNITED STATES of America,**

v.

**Melvin DE JESUS FUENTES MONTERROSA, also known as "Fredi Hernandez," "Felix D. Monterosa" and "Melvin De Jesus Fuentes", Defendant.**

**No. 02 CR 115(ADS)(ETB).**

United States District Court,
E.D. New York.

July 13, 2002.

Alan Vinegrad, United States Attorney, Eastern District of New York, by James M. Miskiewicz, Assistant U.S. Attorney, Central Islip, NY, for Plaintiff.

The Legal Aid Society, Federal Defender Division, Eastern District of New York, by Randi I. Chavis, Central Islip, NY, for Defendant.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On January 25, 2002, an indictment was filed charging Melvin De Jesus Feuntes Monterrosa, also known as "Fredi Hernandez," "Felix D. Monterosa," and "Melvin De Jesus Fuentes" ("Monterrosa" or the "defendant") with violating 8 U.S.C. § 1326(a), which prohibits an alien who has been deported, excluded or denied admission to the United States from attempting to enter or being found in the country without prior permission of the Attorney General. The indictment alleges that Monterrosa was found in the United States, after having been deported following a conviction for an aggravated felony, and did not have the consent of the United States Attorney General to reapply for admission to the country. Presently before the Court is a motion by the defendant to dismiss the indictment on the ground that it violates the double jeopardy clause.

### I. BACKGROUND

Unless otherwise indicated, the following facts are not in dispute. The defendant is a citizen of El Salvador and has never legally resided in the United States. On

November 2, 1993, in Texas state court, following a guilty plea, the defendant was convicted of felony distribution of cocaine and was sentenced to an eight-year term of imprisonment.

On May 1, 1997, the defendant was deported to El Salvador. On or about May 11, 1998, border patrol officers from the Immigration and Naturalization Service ("INS") arrested the defendant for allegedly having entered the country illegally. On or about June 2, 1998, the defendant pled guilty in the Western District of Texas to violating 8 U.S.C. § 1325(a), and was sentenced to 30 days in jail. Section 1325(a) prohibits aliens from, among other things, entering the United States at "any time or place other than as designated by immigration officers."

The defendant explains that on June 23, 1998, the INS filed a warrant for his arrest authorizing that he be detained in INS custody pending deportation proceedings. The defendant was then transferred to an INS detention facility, whereupon he filed an application seeking political asylum in the United States from El Salvador. On December 23, 1999, the INS released the defendant from detention pending resolution of his asylum petition pursuant to an Order of Supervision. The Uniondale, New York, address of Miguel Angel Fuentes, the defendant's cousin, appears on the order which also instructs the defendant to report to the INS office in New York, New York on January 20, 1999.

In a letter dated January 12, 1999 and mailed to the defendant at his cousin's Uniondale, New York address on January 14, 1999, the INS denied the defendant's political asylum application and informed him that the original 1997 deportation order had been reinstated. The INS letter does not instruct the defendant to take any particular action. According to the defendant, he reported to the INS office in New York City on January 20, 1999 and one

time per year thereafter through January 2001. The defendant states that at each visit, the INS provided him with an employment authorization card that was valid for one year.

On May 5, 2000, the defendant was arrested by the Nassau County Police Department and was charged with Menacing in the Second Degree, Penal Law § 120.14, a Class A Misdemeanor. Neither the defendant nor the Government has informed the Court of the particular charge to which the defendant pled guilty, but they agree that it was a misdemeanor. On October 12, 2001, the defendant began serving a four-month sentence in connection with his guilty plea. He completed his sentence on January 10, 2002, at which point he was arrested by the federal authorities on the charges that led to this indictment.

The defendant presently argues that the indictment subjects him to double jeopardy because (1) he was charged, convicted, and punished for re-entering the United States following his deportation when he pled guilty to violating Section 1325(a) in 1998; (2) at that time, the Government could have charged him with violating Section 1326(a) but instead, charged him with the Section 1325(a) misdemeanor; and (3) he was not deported following his 1998 conviction for violating Section 1325(a). On the other hand, the Government contends that the indictment does not violate the double jeopardy clause because Section 1325(a) and Section 1326(a) each contain at least one element that the other section does not.

## II. DISCUSSION

The double jeopardy clause of the Fifth Amendment to the United States Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause protects criminal defendants from multiple prosecu-

tions and multiple punishments for the same criminal offense. *See United States v. Dixon,* 509 U.S. 688, 695–96, 113 S.Ct. 2849, 2855–56, 125 L.Ed.2d 556 (1993); *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), *overruled in part on other grounds, Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). "When a defendant has violated two separate criminal statutes, the protection against double jeopardy is implicated when both statutes prohibit the same offense or when one offense is a lesser included offense of the other." *Aparicio v. Artuz,* 269 F.3d 78, 96 (2d Cir.2001) (citing *Rutledge v. United States,* 517 U.S. 292, 297, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996)). The touchstone for determining whether two statutes prohibit the same offense is "whether the legislature intended to authorize separate punishments for the offensive conduct under separate statutes." *Aparicio,* 269 F.3d at 96–97.

As a practical matter, the Court applies the same-elements test enunciated in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Thus, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182. If the two statutes each require proof of a fact that the other does not, then "there are two offenses, and it presumed that the legislature intended to authorize prosecution and punishment under both." *United States v. Khalil,* 214 F.3d 111, 118 (2d Cir.2000).

Applying these standards to the facts of this case, the questions before the Court are whether Section 1326(a), the statute that is the subject of the present indictment, requires proof of an element not required by Section 1325(a), the statute under which the defendant was previously conviction; and whether Section 1325(a) requires proof of an element not required by Section 1326(a).

The indictment alleges that the defendant, "an alien who had been previously deported from the United States after conviction for the commission of an aggravated felony, was found in the United States without the Attorney General of the United States having consented to such alien's applying for admission." Title 8 U.S.C. § 1326(a) provides that "any alien who . . . (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter (2) enters, attempts to enter, or is at any time found in the United States" without the Attorney General's consent, shall be fined or imprisoned for no more than two years. Notably, Section 1362(b)(2), which is mentioned in the indictment and which provides for a sentence enhancement if the defendant's deportation was subsequent to a conviction for the commission of an aggravated felony, is merely a sentencing factor, not a separate criminal offense. *See Almendarez–Torres v. United States,* 523 U.S. 224, 235, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998); *United States v. Latorre–Benavides,* 241 F.3d 262 (2d Cir.2001) (per curiam). Thus, Section 1326(a) requires proof of four elements: (1) alienage, (2) deportation, (3) attempted reentry or presence in the United States, and (4) lack of the Attorney General's consent to reenter. *See United States v. Barnes,* 244 F.3d 331, 333 (2d Cir.2001) ("A defendant violates § 1326(a) if he is 'an alien who has been . . . deported . . . and thereafter . . . attempts to enter . . . the United States' without having first obtained the permission of the Attorney General."); *United States v. Flores–Peraza,* 58 F.3d 164, 165 (5th Cir.1995).

The misdemeanor complaint to which the defendant pled guilty on or about June 2, 1998 charged him with "knowingly and willfully enter[ing] the United States at a time and place other than as designated by Immigration Officers, he being an alien in the United States" (defendant's letter to the Court, dated June 20, 2002, Exhibit C). Section 1325(a) provides, in relevant part:

Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of any such offense, be ... imprisoned not more than 6 months.

An examination of the language in the two statutes reveals that Section 1326(a), which is charged in this indictment, requires proof of an element that Section 1325(a) does not. Section 1326(a) requires the Government to prove that the defendant has previously been deported from the United States or otherwise "denied admission, excluded ... or removed" from the country or departed the country "while an order of exclusion, deportation, or removal [wa]s outstanding." Section 1325(a) does not require proof of prior deportation.

Likewise, Section 1325(a) requires proof of an element not found in Section 1326(a). The Government must prove one of two things in relation to the defendant's entry into the United States: (1) that it was attempted at a time or place other than those designated by immigration officers, or (2) that it was attempted by a willfully false or misleading representation or the willful concealment of a material fact. Neither of these elements is required by Section 1326(a). The Government could also establish a violation of Section 1325(a)

by proving that the defendant eluded examination or inspection by immigration officers. However, this element is also not required by Section 1326(a).

Notably, "a defendant violating § 1326 very likely has violated at least one of the three prongs of § 1325. The fact remains, however, that a defendant can nevertheless be convicted of § 1326 without any showing of precisely how he entered the country. The government need only show that he was previously deported, did not thereafter obtain permission to return, and was then found in the United States." *United States v. Flores–Peraza*, 58 F.3d 164, 167 (5th Cir.1995).

The defendant bases his double jeopardy argument not on the *Blockburger* test but, rather, on the assertions that (1) he was not deported following the Section 1325(a) conviction; and (2) the Government could have charged him with a Section 1326(a) violation in 1998 but did not. The Court finds both of these arguments to be without merit. A defendant can be convicted of violating two separate criminal statutes based on a single criminal transaction provided that each statute requires proof of a fact that the other does not. *See Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182. Applying the *Blockburger* test, the Court finds that Sections 1325(a) and 1326(a) do not proscribe the same offense. Therefore, whether the defendant was deported following his 1998 conviction, an event that may have given rise to a second criminal transaction, does not affect the Court's conclusion.

Similarly inapposite is the defendant's assertion that the indictment violates the double jeopardy clause because the Government could have charged him with a Section 1326(a) violation in 1998 but did not. A prosecutor has the discretion to decide the crimes with which to charge a defendant and is not required to bring felony charges, even if the facts indicate

that he or she could do so. In any event, the Government's decision to charge the defendant with violating Section 1325(a) in 1998 and to charge him with violating Section 1326(a) in 2001 does not change the fact that the present indictment does not violate the Fifth Amendment prohibition on double jeopardy because each statute requires proof of a fact that the other does not. *See Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182.

### III. *CONCLUSION*

Based on the foregoing, and having given the parties an opportunity for oral argument, it is hereby

**ORDERED**, that the defendant's motion to dismiss the indictment on double jeopardy grounds is **DENIED**.

**SO ORDERED.**