**Wilfred LETLOW, Petitioner,**

v.

**John H. SABOURIN, Respondent.**

**No. CIV.01–0103 LBS.**

United States District Court, E.D. New York.

Nov. 8, 2002.

## MEMORANDUM AND ORDER

SAND, District Judge.*

Wilfred Letlow ("Letlow" or "Petitioner") brings this petition pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The sole ground Petitioner presents for relief is the ineffective assistance of appellate counsel for erroneously convincing him to forsake his right to appeal his state conviction.

## I. Background

On August 24, 1995, Letlow stabbed his wife ninety-two times with a pair of scissors in their locked bedroom.[1] Subsequent to his indictment on murder charges Letlow, together with his sister Shirley Gibbons ("Gibbons"), engaged as attorneys Ronald L. Kuby ("Kuby") and his associate Daniel M. Perez ("Perez"). Surveying the strength and nature of the evidence against his client, Kuby opted for a bench trial and presented a defense of extreme emotional disturbance. This defense was apparently successful, and the Queens Supreme Court trial judge convicted Letlow of first degree manslaughter. On November 24, 1997, Letlow received a sentence of eight and one-third to twenty five years.

On December 4, 1997, Kuby timely filed a notice of appeal with the Appellate Division. Both Kuby and Perez repeatedly discussed with Letlow the advisability of appealing his sentence. According to Kuby:

Wilfred Letlow, Beacon, NY, for Petitioner.

Alyson Joy Gill, John Michael Castellano, District Attorney's Office, Kew Gardens, NY, for Respondent.

* Sitting by Designation.

1. According to the District Attorney's affidavit, the government "does not have a copy of the trial transcript, and has been unable to locate the trial folder." All the Court has available to it, then, are the facts stated in the District Attorney's affidavit, affidavits provided by Petitioner's attorneys and sister, and the facts alleged in Petitioner's various state and federal filings. "Since those statements of fact do not differ materially" on much of the factual and procedural history of the case, the court relies on them here. *Cole v. New York*, 2001 WL 1606888, *1 n. 1 (S.D.N.Y.2001) (Martin, J.). Where the statements do differ materially, the Court so notes. The Court's reliance thereon for the purpose of this Memorandum and Order should not be taken to suggest that the affidavits and filings would be sufficient to permit the Court to dispose of the Petition.

I fully informed Mr. Letlow about his right to appeal, and options regarding appellate attorneys. I made it clear to him that I believed an appeal to be totally without merit .... I felt that Mr. Letlow received a huge break from Judge Rotker, and no appellate court on earth [sic] was going to reduce the sentence of a man who stabbed his wife 92 times in a fit of rage any lower than the sentence he received .... Because he would be eligible for parole after his minimum term, I felt that it was a good strategy for him to start demonstrating remorse immediately. I informed Mr. Letlow that, too often, prisoners only show remorse after the last appeal fails, and that parole boards look askance at such recent expressions of sorrow. In light of the worthlessness of the appeal, I suggested that he might consider making a virtue out of necessity and waive the appeal, thereby demonstrating his belief that he was treated fairly and that he was deserving of some punishment for what he had done. Mr. Letlow agreed with my analysis.

(Kuby Affirmation at 7.)

According to Perez:

I told Mr. Letlow repeatedly that, like all people convicted of a crime, he had a constitutional right to appeal his conviction and his sentence .... [2] During our post-trial conversations, I told Mr. Letlow that it was my opinion, and Mr.

Kuby's opinion, that any appeal of either his conviction or his sentence would be extremely unlikely to succeed .... I also said that at some point, he would face a parole board, and he could point to his waiver of his right to appeal as an immediate and genuine manifestation of remorse and responsibility for his actions, which might, in turn, lead to an earlier parole release.

(Perez Affirmation at 1–2.)

On April 6, 1998, a few days after their latest conversation, Perez wrote in a letter to Petitioner, enclosing an unsigned waiver of appeal:

Our opinion and advice is that you do not appeal your conviction or sentence, since we are unable to think of any issues that you could appeal .... You should be aware that you do have a right to an appeal; I don't want you to read this letter as asserting otherwise. I am only saying that we believe your appeal would be unsuccessful, even if we could find some ground. Thus, I would like you to think about it, consult with your family, friends and the clergy, and consider signing the enclosed waiver.

(Letter from Perez to Letlow, Apr. 6, 1998.) [3]

On April 19, 1998, Letlow responded:

I received your letter dated 4/6 and thank you for your care and concern.

---

**2.** *But see Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 402–3, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001) ("[E]ach State has created mechanisms for both direct appeal and state postconviction review, even though there is no constitutional mandate that they do so.") (citation omitted); *People v. Rosenberg*, 45 N.Y.2d 251, 260, 408 N.Y.S.2d 368, 380 N.E.2d 199 (1978) ("In noncapital criminal cases, the right of appeal is strictly statutory.")

**3.** The waiver stated:

1. I have been advised by my attorney, Daniel M. Perez, that I have a right to appeal my conviction and sentence, duly entered on November 24, 1997.
2. Nevertheless, I freely and voluntarily waive my right to appeal either my sentence or my conviction. I hereby instruct my attorney, Daniel M. Perez, to withdraw my Notice of Appeal, and inform the Clerk of the Supreme Court, Criminal Term, of Queens County, and the Appellate Division, Second Department, that I no longer wish to appeal my conviction or sentence.

Well Shirley visited me and we discussed your letter and we conclude that we will agree with you and waive the appeal, so enclosed is the signed notice. Thanks again for your advice.

(Letter from Letlow to Perez, Apr. 19, 1998.)

Perez mailed the signed waiver to the Appellate Division and on April 30, 1998, the court withdrew Letlow's appeal. *People v. Letlow*, No. 3997/95, Decision & Order on Motion (2d Dep't Apr. 30, 1998).

Concurrently with these consultations, Gibbons (who was paying for her brother's defense) also consulted with Kuby and Perez. According to Petitioner, just before Perez sent the April 6 letter Gibbons informed Perez that, even though she still owed approximately $10,000 of the $30,000 fee, she had no further money to pay him. (Petition at unnumbered pages 6–7.)[4] Petitioner alleges that only upon learning this fact did Perez express doubts about pursuing the appeal. (Petition at unnumbered page 7.) Kuby counters that Gibbons was still making payments at that point, and suggests that if Letlow had decided to retain his firm for the appeal he "would have been happy to work out a payment plan." (Kuby Affirmation at 9.) Perez similarly claims to have discussed with Gibbons that, because the original fee agreement covered only the trial, they could either work out a new agreement for appeal, or Letlow could seek appointed counsel. (Perez Affirmation at 2–3.) For their parts, both Petitioner and Gibbons claim to have had the understanding that the original $30,000 fee covered *both* trial and appeal, and that by advising Petitioner to withdraw the appeal Kuby and Perez were saving themselves work for which they were unlikely to have been compensated. (Gibbons Affidavit at 1.)

A month later, Petitioner began to have second thoughts, and wrote so to Kuby, inquiring whether he might be able to appeal his sentence as excessive. (Letter from Letlow to Kuby, May 26, 1998.) A year and a half after that, Petitioner again wrote Kuby expressing doubts as to the wisdom of the waiver. (Letter from Letlow to Kuby, Nov. 29, 1999.) Neither letter received any response. At the end of 1999, "[a]fter seeking help from the facility law library, and finding that Mr. Kuby only asked for [the] waiver after speaking to [Gibbons] and finding that he could not get any more money," Petitioner determined that the waiver had been a mistake forced upon him by counsel for their own pecuniary motivations. (Petition at unnumbered page 6.) Specifically, Petitioner asserts that counsel should have encouraged him to appeal on the ground of excessive sentence. (Petition at unnumbered page 8.)

On January 21, 2000, Petitioner filed pro se in the Appellate Division an application "pursuant to" Crim. Proc. L. § 460.10(1)(a) to reinstate his appeal *nunc pro tunc*, arguing that Kuby and Perez's self-motivated false advice had led him to withdraw the appeal in the first place. (*See* Affidavit in Support of Motion To Appeal, Jan. 21, 2000.) The government took no position, but the Appellate Division denied the motion on March 3, 2000. *People v. Letlow*, No. 3997/95, Decision & Order on Motion (2d Dep't Mar. 3, 2000). Petitioner sought leave to appeal to the Court of Appeals, but the application was dismissed on the ground that "the order sought to be appealed is not appealable under Criminal Procedure Law, section 450.90(1)." *People v. Letlow*, 94 N.Y.2d 949, 710 N.Y.S.2d 6, 731 N.E.2d 623 (2000), Certificate Dismiss-

---

4. Petitioner variously attributes these conversations to both Kuby and Perez. Where it is uncertain to which counsel Petitioner refers,

the Court has chosen the more likely and consistent alternative.

ing Application (Apr. 14, 2000). On June 4, 2000, Petitioner filed for a writ of error coram nobis, presenting the same arguments. (*See* Petition for Writ of Error Coram Nobis, June 4, 2000.) On June 12, 2000, the clerk of the Appellate Division dismissed the petition on the ground that coram nobis was not available where no appeal had been decided in the first place. (Letter from Clerk's Office to Letlow, June 12, 2000.) Petitioner signed the instant petition on December 26, 2000, and it was filed in this Court on January 5, 2001, over three years after his state court sentencing.

## II. Period of Limitation

■ The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that habeas corpus petitions brought under 28 U.S.C. § 2254, such as the instant petition, are subject to a one-year period of limitation. The statute provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

*See also Lindh v. Murphy,* 521 U.S. 320, 327, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) (finding that the period of limitation applies "to the general run of habeas cases . . . filed after the date of the Act"). Petitioner was sentenced on November 24, 1997 and withdrew his notice of appeal on April 30, 1998. The instant petition was signed by Petitioner on December 26, 2000, and filed in this Court on January 5, 2001. The District Attorney, however, makes no mention of the statutory period of limitation in its brief. This Court is authorized to raise the issue *sua sponte,* but before dismissing a petition on that basis must ordinarily give a petitioner notice and an opportunity to respond. *See Acosta v. Artuz,* 221 F.3d 117, 124 (2d Cir.2000).

■ Both parties are therefore directed, as stated at the conclusion of this Memorandum and Order, to address the question whether the period of limitation contained within § 2244(d) bars this Petition. The parties should address specifically on what date the period of limitation began to run. *See, e.g., Wims v. United States,* 225 F.3d 186, 190–91 (2nd Cir.2000) (finding an issue of fact as to when an attorney's failure to appeal "could have been discovered through the exercise of due diligence" for the purposes of § 2244(d)(1)(D)). They should also address whether the period was tolled for any ex-

tent of time pursuant to § 2244(d)(2). *See, e.g., Bethea v. Girdich,* 293 F.3d 577, 579 (2d Cir.2002) (holding that "a motion to extend the time to appeal or to file a late notice of appeal does not 'restart' the AEDPA limitation period" and doubting that such a motion even tolls the period); *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000) (per curiam) (holding that the tolling provision "excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run"); *Raynor v. Dufrain,* 28 F.Supp.2d 896, 899 (S.D.N.Y. 1998) (Connor, J.) (finding that the period of limitation is not tolled during the appeal of a motion dismissed as "non-appealable by the Court of Appeals under C.P.L. § 450.90(1)"). Finally, the parties should address whether there is any basis in this case to justify equitable tolling. "Equitable tolling applies only in the rare and exceptional circumstance[ ]." *Smith,* 208 F.3d at 17 (citation omitted and alteration in original). "In addition, the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll." *Id. See also, e.g., Smaldone v. Senkowski,* 2000 WL 1134391, *5 (E.D.N.Y. Aug. 3, 2000) (Gleeson, J.), *aff'd,* 273 F.3d 133 (2d Cir.2001) (collecting cases which have "rebuffed claims for equitable tolling raised by habeas petitioners based on attorney error").

III. Exhaustion and Procedural Default

 "If anything is settled in habeas corpus jurisprudence, it is that a federal court may not grant the habeas petition of a state prisoner 'unless it appears that the applicant has exhausted the remedies available in the courts of the State.'" *Aparicio v. Artuz,* 269 F.3d 78, 89 (2d Cir.2001) (quoting 28 U.S.C. § 2254(b)(1)(A)). As a corollary to this rule, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997) (quoting *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991)); *see also* 28 U.S.C. § 2254(b)(1)(B). "This apparent salve, however, proves to be cold comfort to most petitioners" because if claims are procedurally barred in state court, "federal habeas courts also must deem the claims procedurally defaulted." *Aparicio,* 269 F.3d at 90 (citing *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

Again, the District Attorney makes no mention in its brief of either exhaustion or procedural default. Nonetheless, the Court harbors doubts whether—assuming *arguendo* that the Petition is not barred by the period of limitation—it ought to reach the merits of Petitioner's claim. A defendant has thirty days from sentencing to appeal to the Appellate Division. *See* N.Y.Crim. Proc. L. § 460.10(1)(a). Although Petitioner did file his initial notice of appeal within this time frame, once the notice was withdrawn on April 30, 1998, the thirty days had long passed. New York does provide a statutory mechanism to file a late appeal, including appeals based on "improper conduct ... of the defendant's attorney"—but that mechanism itself imposes a time limit of one year "after the time for the taking of such appeal has expired." *See* N.Y.Crim. Proc. L. § 460.30. *See also People v. Corso,* 40 N.Y.2d 578, 580–81, 388 N.Y.S.2d 886, 357 N.E.2d 357 (1976); *Restrepo v. Kelly,* 178 F.3d 634, 636 (2d Cir.1999). Although we are now well beyond the one year time limit, and Petitioner has apparently not availed himself of the relief afforded by § 460.30, the Court hesitates to rule as a matter of state law that § 460.30 is unavailable. *See Carpenter v. Reynolds,* 212 F.Supp.2d 94 (E.D.N.Y. July 27, 2002) (Spatt, J.) (dismissing a habeas petition as

unexhausted where petitioner never filed an appeal and the one year time limit of § 460.30 had expired, because petitioner "must still present that claim" to the state court) (quoting *Pesina v. Johnson,* 913 F.2d 53 (2d Cir.1990)). *See also Pesina,* 913 F.2d at 54 (finding a petition unexhausted where petitioner had failed to appeal the denial of a motion under N.Y.Crim. Proc. L. § 440.10 even though the statutory time limit to appeal the denial had passed). *But see Priester v. Senkowski,* 2002 WL 1448303, *6–7 (S.D.N.Y. July 3, 2002) (Gorenstein, M.J.) (collecting cases criticizing the *Pesina* rule).[5]

Accordingly, and because the Court is already directing the parties to make further submissions on the applicability of § 2244(d)'s period of limitations, it directs as well that the parties present further submissions dealing with the question whether Petitioner has in fact exhausted his claim, and whether or not that claim is procedurally barred.

## IV. Conclusion

For the reasons outlined above, it is hereby ORDERED that the respondent shall have forty-five (45) days from this Memorandum and Order to file a brief addressing whether the claim in this Petition is exhausted and/or procedurally barred, and whether the Petition itself is barred by the period of limitation in 28 U.S.C. § 2244(d).

IT IS FURTHER ORDERED that Petitioner shall have thirty (30) days from the date on which he is served with respondent's brief to file a reply.

SO ORDERED.

---

**5.** Furthermore, it is far from clear to this Court whether § 460.30 is applicable to a defendant who actually filed an appeal but later withdrew that appeal. *See* § 460.30(1) ("Upon motion to an intermediate appellate court of a defendant who desires to take an appeal to such court from a judgment, sentence or order of a criminal court but has *failed to file a notice of appeal* ... within the prescribed period[,] ... such intermediate appellate court ... may order that the time for the taking of such appeal or applying for leave to appeal be extended ....") (emphasis added).

Instead of pursuing relief under § 460.30, Petitioner applied to the Appellate Division to reinstate his appeal *nunc pro tunc.* Again, this Court is unversed in the procedural regularity of such a motion. *Compare People v. Desir,* 1986 N.Y.App. Div. LEXIS 52241 (1st Dep't July 24, 1986) ("Motion to permit service, *nunc pro tunc,* of notice of appeal, and for enlargement of time to perfect appeal to the October 1986 Term, granted, and cross-motion to dismiss appeal denied."), *with People v. Yates,* 165 Misc.2d 375, 376, 630 N.Y.S.2d 449 (1995) (finding an order by a lower court allowing "late filing of the notice of appeal with that court, *'nunc pro tunc,'*" to be "without force and effect" because the defendant who failed timely to appeal did not proceed under § 460.30). Nonetheless, the Appellate Division considered Petitioner's motion in this case, and denied it. *Letlow,* Decision & Order on Motion ("Upon the papers filed in support of the motion, and the papers filed in relation thereto, it is hereby ORDERED that the motion is denied."). Whether the denial was on the merits or on procedural grounds is a different question, one which neither party has addressed. *See Sellan v. Kuhlman,* 261 F.3d 303, 312–13 (2d Cir.2001) (finding that a state court determination with nearly identical language constituted an adjudication on the merits). *But see id.* at 314 (suggesting that such cursory language might not constitute an adjudication on the merits where there is "basis for believing that the Appellate Division rejected the claim on non-substantive grounds").