Christopher ASHBY, Petitioner,

v.

Daniel SENKOWSKI, Superintendent, Clinton Correctional Facility, Respondent.

No. 03–CV–0028 ADS.

United States District Court, E.D. New York.

July 3, 2003.

Christopher Ashby, Malone, NY, for Petitioner, pro se.

Denis Dillon, District Attorney of Nassau County, by Assistant District Attorneys, Tammy J. Smiley and Karen Wigle Weiss, Mineola, NY, for Respondent.

SPATT, District Judge.

Petitioner Christopher Ashby, appearing *pro se*, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### UNDERLYING FACTS AND PROCEDURAL HISTORY

In the evening of July 24, 1995, Petitioner, armed with a gun, and a co-defendant,

Paul Henry ("Henry"), pulled Mrs. Shin Ja Chun from a walkway in front of her family's Valley Stream, New York home, and dragged her inside the home. Another codefendant, Avril Forman, waited in a nearby car. Inside the home, Petitioner and Henry bound Mrs. Chun's hands, and forced her at gunpoint to walk through different rooms of the house in search of money. Petitioner hit Mrs. Chun several times during the incident, including once in the head with the gun when he noticed her looking at him.

While the three were upstairs, Mrs. Chun's husband, Myung Kuk, and her twenty-three-year-old son, Frank, arrived home. Unaware of the intruders, Frank carried a large water bottle into the dining room. As he set it down, the Petitioner appeared and shot Frank in the head. Petitioner then fired two shots at Mr. Chun, hitting him in the thigh and elbow. The Petitioner and Henry then fled to the waiting car. Though Mr. Chun was able to recover from his wounds, Frank died as a result of the gunshot.

Four days later, Mrs. Chun identified Petitioner from a large array of photographs at the police precinct. Petitioner was not arrested until July, 1997, when he was found on the island of Jamaica and extradited to New York. On March 1, 1999, Mrs. Chun viewed a police-arranged line-up and identified Petitioner for the second time.

On January 18, 2000, Petitioner was convicted after a jury trial in the County Court, Nassau County (Calabrese, J.), of three counts of Murder in the Second Degree (N.Y. Penal Law § 125.25(2), (3) (depraved indifference murder and two counts of felony murder, or counts two, three, and four, respectively)), Assault in the First Degree (N.Y. Penal Law § 120.10(1) (count six)), two counts of Robbery in the First Degree (N.Y. Penal Law § 160.15(1),

(2) (counts seven and eight)), Robbery in the Second Degree (N.Y. Penal Law § 160.10(1)(2) (counts seven and eight)), Robbery in the Second Degree (N.Y. Penal Law § 160.10(1) (count nine)), and Burglary in the First Degree (N.Y. Penal Law § 140.30(1) (count ten)).

The Petitioner was sentenced to indeterminate prison terms of twenty-five years to life for each murder charge, eight and one-third to twenty-five years for each of the assault, first-degree robbery, and burglary charges, and five to fifteen years for the second-degree robbery charge. The sentences imposed for the murder convictions were directed to run concurrently with each other. The second count (depraved indifference murder) was to run consecutively with counts six through ten (assault, robbery [all counts], and burglary). The three robbery counts were to run concurrently with each other, but consecutively with counts two and six (depraved indifference murder and assault). The assault conviction was to run consecutively with all other counts. The burglary conviction was to run concurrently with counts three, four, and seven through nine (felony murder (robbery), felony murder (burglary), all robbery counts, and burglary), and consecutively with counts two and six (depraved indifference murder and assault). In the aggregate, Petitioner was sentenced to thirty-three and one-third years to life in prison.

Petitioner directly appealed his conviction to the New York State Supreme Court, Appellate Division, Second Department ("Appellate Division"), alleging that the trial court should have suppressed identification testimony at trial on the basis of various alleged errors that rendered the pretrial identification procedures unduly suggestive. On December 31, 2001, the Appellate Division affirmed Petitioner's conviction, holding that (1) "the hearing

court properly determined that the pretrial identification procedures ... were not unduly suggestive"; and (2) "the lineup identification procedure conducted by the police was not unduly suggestive." *People v. Ashby,* 289 A.D.2d 588, 588, 735 N.Y.S.2d 715, 716 (2d Dep't 2001). On January 29, 2002, Petitioner filed an application for leave to appeal in the New York Court of Appeals. On February 27, 2002, the Court of Appeals denied Petitioner's request for leave to appeal. *See People v. Ashby,* 97 N.Y.2d 727, 740 N.Y.S.2d 699, 767 N.E.2d 156 (2002).

On September 30, 1998, Petitioner, appearing *pro se,* moved to vacate the judgment of conviction, pursuant to New York Criminal Procedure Law § 440.10, alleging that: (1) he was denied the effective assistance of counsel; and (2) new evidence had been discovered. On May 6, 2002, the County Court, Nassau County (Calabrese, J.), denied the motion, stating that: (1) the ineffective assistance of counsel claim was not raised on appeal; and (2) Petitioner failed to identify in his moving papers any newly discovered evidence. Petitioner did not seek leave to appeal from the County Court's 440 decision.

On December 12, 2002, the Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that: (1) impermissibly suggestive identification procedures denied him the right to due process; and (2) he was sentenced to concurrent and consecutive prison terms for the same offenses in violation of New York Penal Law § 70.25(2).

## DISCUSSION

Petitioner filed the instant petition for a writ of habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Accordingly, AEDPA's provisions apply to his case. *See Williams v. Taylor,* 529 U.S. 420, 429, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000).

Under the provisions of Section 2254(d), a habeas corpus petition must be denied unless the state court's adjudication of the claim either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2).

A decision is "contrary to" established Federal law if it either "applies a rule that contradicts the governing law set forth in" a Supreme Court case, or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent." *Penry v. Johnson,* 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001) (citing *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Penry,* 532 U.S. at 792, 121 S.Ct. 1910.

## I. Exhaustion

A petitioner that seeks habeas relief under Section 2254 must first exhaust his claims in the state courts. *See* 28 U.S.C. § 2254(b)(1); *Aparicio v. Artuz,* 269 F.3d 78, 89 (2d Cir.2001). This procedure is intended to give state courts the first opportunity to correct errors of constitutional dimension. *See Rose v. Lundy,* 455 U.S. 509, 515–16, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

■ Where appeals to a state's highest court are discretionary, complete exhaustion occurs only where a petitioner has sought discretionary review of each claim he seeks to assert under Section 2254. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842–43, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). The petitioner must have presented the substance of the same federal constitutional claims in his habeas petition to the highest state court. *See Aparicio*, 269 F.3d at 89–90; *Daye v. Attorney Gen.*, 696 F.2d 186, 191 (2d Cir.1982) ("In order to have fairly presented his federal claim to the state courts, the petitioner must have informed the state court of both the factual and legal premises of the claim he asserts in federal court.").

■ A federal habeas court must deem a petitioner's claim procedurally defaulted where " 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.' " *Apari-cio*, 269 F.3d at 90 (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). The court will not review the merits of a procedurally defaulted claim unless the petitioner can show (1) cause for the default and actual prejudice resulting therefrom; and (2) that failure to consider the claim will result in a fundamental miscarriage of justice. *See Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir.1994).

Petitioner has not presented his sentencing error claim to the state courts and has thus failed to exhaust state appellate remedies. Further, while his time to file an appeal has expired, *see* N.Y.Crim. Proc. Law § 460.10, Petitioner may still file a motion to set aside his sentence in the state court. *See* N.Y.Crim. Proc. Law § 440.20.

■ However, because the AEDPA authorizes the denial of a habeas corpus petition on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State," the Court will review the Petitioner's sentencing error claim. *Turner v. Artuz*, 262 F.3d 118, 122 (2d Cir.2001) (citing 28 U.S.C. § 2254(b)(2)).

## II. As to the Alleged Sentencing Error

Petitioner claims that the sentencing court violated New York Penal Law § 70.25(2) when it imposed "concurrent and consecutive prison terms for the same offenses." (Pet. at 6A). Specifically, Petitioner contends that the sentences for his three robbery convictions should run concurrently, rather than consecutively, with his second degree murder convictions and his burglary conviction because those offenses were allegedly "committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other[.]" N.Y. Penal Law § 70.25(2).

Contrary to Petitioner's assertions, however, the sentences for the two counts of felony murder were directed to run concurrently, rather than consecutively, with the burglary and robbery convictions. Likewise, the sentences for his burglary and robbery convictions were directed to run concurrently with each other.

■ Nevertheless, this Court only has jurisdiction over those claims which allege that a petitioner's custody violates "the Constitution, laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, federal habeas corpus relief is not available for state law errors that do not amount to federal constitutional violations. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 479–80, 116 L.Ed.2d 385 (1991);

*Smith v. Phillips,* 455 U.S. 209, 211, 102 S.Ct. 940, 943, 71 L.Ed.2d 78 (1982) (holding that non-constitutional claims are not cognizable in federal habeas proceedings); *Beverly v. Walker,* 899 F.Supp. 900, 908 (N.D.N.Y.1995). A challenge to the imposition of consecutive sentences fails to present an issue of constitutional dimension if the sentence falls within the range prescribed by state law. *See White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992). In such a case, there is no constitutional issue to warrant habeas relief. *See Ross v. Gavin,* 101 F.3d 687, 1996 WL 346669, at *1 (2d Cir.1996) ("It is well settled that '[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by state law' ") (quoting *White,* 969 F.2d at 1383).

■ Here, Petitioner's sentence falls within the range prescribed by New York state law. *See* N.Y. Penal Law § § 70.00(1), (2)(a)-(c), (3). Moreover, the trial court has discretion to impose consecutive sentences where there are multiple convictions and the offenses represent separate and distinct acts. *See* N.Y. Penal Law § 70.25[2]; *see also People v. Daniels,* 240 A.D.2d 590, 659 N.Y.S.2d 67, 68 (2d Dep't 1997) (holding the imposition of consecutive sentences for second-degree murder, first-degree robbery, and attempted first-degree robbery proper where defendant displayed a gun, demanded money from three victims, and then shot and killed one victim after ordering him out of a parked truck); *People v. Meehan,* 229 A.D.2d 715, 646 N.Y.S.2d 716, 718 (3d Dep't 1996) (holding consecutive sentences proper for robbery and depraved indifference murder convictions where there was "evidence that the serious physical injury necessary for the robbery conviction was caused by an act other than the homicidal act"); *People v. Hunt,* 174 A.D.2d 980, 572 N.Y.S.2d 139, 140 (4th Dep't 1991) (providing that intentional murder and burglary arose out of separate acts because burglary was complete when defendant entered the home with the intent to commit a larceny and "the murder was committed thereafter when the victim unexpectedly returned home and defendant intentionally caused her death"). Because Petitioner has not alleged, much less proven, that the supposed state law error violated his federal constitutional rights, his claim is not cognizable for habeas corpus review.

■ Finally, while not cognizable in its present form, Petitioner's claim may be reviewed if it is construed as a claim that his sentence was imposed in violation of the Eighth Amendment prohibition against cruel and unusual punishment. However, "the imposition of consecutive sentences is found to run afoul of the Eighth Amendment 'only under extraordinary circumstances.'" *Herrera,* 171 F.Supp.2d at 151 (quoting *Salcedo v. Artuz,* 107 F.Supp.2d 405, 414 (S.D.N.Y.2000) ("A court may refuse to exercise deference [to the length of sentence deemed appropriate by the legislature] only in extreme circumstances such as where the punishment is barbaric or vastly disproportionate to the crime committed.")).

An overall review of the record reveals no extraordinary circumstances to support a claim that Petitioner's sentence is excessive and amounts to cruel and unusual punishment. Rather, the trial court properly exercised its discretion when it imposed consecutive sentences. Accordingly, Petitioner's sentencing error claim is dismissed.

### III. As to the Alleged Unduly Suggestive Identification Procedures

The Petitioner claims that he was denied his right to due process as a result of impermissibly suggestive identification procedures.

Prior to the trial, the Petitioner moved to suppress Mrs. Chun's photo-pack and line-up identifications, and requested that the court preclude Mrs. Chun's identification testimony at trial. After a *Wade* hearing, *see United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the trial court made the following factual findings:

Mrs. Chun described one of the male perpetrators as 6'–6' 2" tall, thin, clean-cut looking and well dressed in dark clothing, wearing a hoop style earring and having rounded drooping eyes. The other male was described as 6'–6' 2" tall, heavier, and also clean cut looking and well dressed in dark clothing.... On July 28, 1995, Mrs. Chun went to the 112th Precinct of the New York City Police Department to view various arrest photographs kept in file drawers. At that time, and after several hours of viewing, Mrs. Chun picked out a photograph of the thinner male. Notations on the back of the photograph identified him as Christopher Bailey/Ashby.... [Petitioner] was ultimately apprehended in Jamaica and extradited to New York in February 1999. Mrs. Chun initially learned of [Petitioner]'s apprehension in December 1998—January 1999 from Detective Lane and also that he would ultimately be extradited to New York.... On March 1, 1999, a line-up was conducted at the Nassau County Police Robbery Squad in Bellmore. Prior to the line-up, Detective Lane called Mrs. Chun's son Michael and told him that the line-up would be held and that the suspect from Jamaica would be in it.... With his attorney present, [Petitioner] voluntarily choose [sic] spot number "5" in the line-up. In addition, with [Petitioner]'s attorney present, five "fillers" were also selected for the line-up. All six persons were shrouded with white sheets, wore hats and had a card variously numbered from one to six in front of each of them.... In the [line-up] room she was asked if she recognized anyone and within thirty to forty-five seconds identified [Petitioner]. [Petitioner]'s attorney was present during this identification.... There is no evidence that Michael Chun ever told his mother that the suspect would be in the line-up, that Mrs. Chun ever inquired about such from anyone connected with the line-up or, assuming arguendo she had such knowledge, that it ever, in any way, influenced her selection.

Order dated June 2, 1999, of Supreme Court, Nassau County (Calabrese, J.), at 2–3.

Based on these findings, the court concluded that the identification procedures were not unduly suggestive and were reasonably employed. Further, the court explained that the "the use of th[e] photo identification [did not] impermissibly taint what was an otherwise fair line-up procedure, albeit, some [three-and-a-half] years later[,]," and that "[n]either Mrs. Chun's learning of [Petitioner]'s apprehension nor Detective Lane's telling her son that the suspect would be in a line-up tainted the identification procedure." *Id.* at 3–4.

The Appellate Division upheld the hearing court's decision, stating that "[t]he ... pretrial identification procedures ... were not unduly suggestive[,]" and that "[t]he sheer volume and scope of the ... procedure[,] [in which] the complainant viewed hundreds of photographs of men ... of the same race and a similar age as the [Petitioner] militate[d] against suggestiveness." *People v. Ashby,* 289 A.D.2d 588, 588, 735 N.Y.S.2d 715, 716 (2d Dep't 2001) (citations omitted). The court also held that the line-up procedure was not unduly suggestive, and found that "[t]he photograph taken of the lineup show[ed] that the fillers sufficiently resembled the [Petitioner] in

age and physical characteristics." *Ashby,* 735 N.Y.S.2d at 716 (citations omitted).

 A criminal defendant has a due process right under the Fourteenth Amendment to be free from pretrial identification procedures "that are so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *see also Neil v. Biggers,* 409 U.S. 188, 196, 93 S.Ct. 375, 380–81, 34 L.Ed.2d 401 (1972); *United States v. Eltayib,* 88 F.3d 157, 166–67 (2d Cir.1996). Nevertheless, even where a pretrial identification procedure was unduly suggestive, a witness may identify the defendant in court if the in-court identification is independently reliable. *See Eltayib,* 88 F.3d at 167; *United States v. Tortora,* 30 F.3d 334, 338 (2d Cir.1994). Factors used to determine independent reliability include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [the witness'] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *United States v. Wong,* 40 F.3d 1347, 1359 (2d Cir.1994) (citations omitted).

Furthermore, the habeas corpus petitioner faces the added burden of overcoming the presumption of correctness afforded to a state court's factual findings. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

### A. As to the Alleged Improper Photo Identification Procedure

 The Court finds that it was appropriate and reasonable for the state court to conclude that the photo identification procedure was not improperly suggestive. "A photo array is improperly suggestive if 'the picture of an accused, matching descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that [that person] was more likely the culprit.'" *Eltayib,* 88 F.3d at 166 (quoting *United States v. Thai,* 29 F.3d 785, 808 (2d Cir.1994)) (alteration in original).

That Mrs. Chun had the opportunity during the photo identification to view hundreds of photographs of individuals similar to the Petitioner in age and race rendered it unlikely that there was any danger of misidentification. *See, e.g., Simmons,* 390 U.S. at 386 (providing that the more photographs of persons resembling a defendant the complainant views, the less danger of misidentification). Further, the record does not reveal, nor does Petitioner suggest, that his photograph was somehow unique or singled out from the array, or that detectives accentuated the Petitioner's photograph over others.

### B. As to the Alleged Improper Line–Up Identification Procedure

 Similarly, there is no indication in the record that the line-up identification procedure was improperly suggestive. Petitioner was represented by an attorney at the precinct. He was given the opportunity to choose a position in the line-up, and chose seat number five. There were five fillers used, all of similar age, and each wore a hat to disguise hairstyles. In order to counteract any differences in clothing or height, the men were also seated and covered in sheets.

 Nevertheless, even if the procedures employed in this case were suggestive, the Court finds that Mrs. Chun's in-court identification was independently reliable. During the robbery and before the murder, Petitioner dragged Mrs. Chun

through her house in search of money. Petitioner was not wearing a mask, and even hit Mrs. Chun in the head with the gun when he believed she looked at his face. Her description of the perpetrator clearly matched the Petitioner's appearance when the crime was committed. Further, when Mrs. Chun viewed the line-up, it was only thirty to forty-five seconds before she exclaimed: "Number five, number five," and told detectives, "I told you, the eyes.... That's the skinny one that shot them[.]" (H'rg Tr. at 31). The danger of misidentification in this case is only undermined by the fact that a co-defendant, Avril Forman, testified to the Petitioner's involvement.

Based on the deference this Court must afford to the state courts' factual determinations and Petitioner's failure to rebut by clear and convincing evidence the presumption that those findings were correct, his claim must fail. Accordingly, Petitioner's impermissibly suggestive identification claim is dismissed.

### CONCLUSION

For the foregoing reasons, Ashby's petition for a writ of habeas corpus is DENIED. Pursuant to Fed. R.App. Pro. 22(b) and 28 U.S.C. § 2253(c)(2), a certificate of appealability is denied, as Ashby has not made a substantial showing of a denial of a constitutional right. *See Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Barefoot v. Estelle,* 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090; *Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000).

The Clerk of the Court is directed to close this case.

**SO ORDERED.**