IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 4, 2008

## BRANDON MCCASLIN v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Dyer County**
**No. C04-55A     Lee Moore, Judge**

---

**No. W2007-01352-CCA-R3-PC  - Filed June 12, 2009**

---

Petitioner, Brandon McCaslin, appeals the dismissal of his petition for post-conviction relief in which he alleged that his trial counsel rendered ineffective assistance of counsel at trial and on appeal.  Specifically, Petitioner contends that trial counsel was ineffective because he failed (1) to challenge certain prospective jurors during voir dire; (2) to object to the State's admission of evidence that Petitioner had a prior conviction for the unauthorized use of a vehicle; (3) to request the trial court to instruct the jury on the use of impeachment evidence; and (4) to preserve and raise issues on appeal other than the sufficiency of the convicting evidence.  After a thorough review of the record, we conclude that Petitioner has failed to show that his trial counsel rendered ineffective assistance and affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Ralph I. Lawson, Dyersburg, Tennessee, for the appellant, Brandon McCaslin.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; and C. Phillip Bivens, District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I.  Background

Following a jury trial, Petitioner was convicted of two counts of theft of property over $1,000, both Class D felonies. The facts surrounding Petitioner's convictions were summarized by this Court in the direct appeal as follows:

> Defendant drove himself and Mr. Doss, his co-defendant, to Jones Jewelry and then
> to the Diamond Gallery in Dyersburg.  At both stores, Mr. Doss removed entire trays

of rings while the Defendant spoke with the store attendants. The Defendant then drove himself, Mr. Doss, and a mutual acquaintance to several pawn shops, where three of the stolen rings were sold. The sale of the stolen property came to an end when the owner of the fourth pawn shop visited became suspicious and called the police. Based on descriptions from the clerks at the two jewelry stores and the pawn shop owner, along with the surveillance tape footage, Dyersburg Police Officers began looking for the Defendant and his co-defendant. Shortly thereafter the Defendant's vehicle was discovered near his mother's house, and arrest warrants were obtained for the two men. The Dyersburg Police gained entry to the house, wherein they found the Defendant and Mr. Doss hiding. The two were taken into custody and separately interviewed at the police station. The Defendant informed the police that the remainder of the rings were hidden in his mother's house.

At trial, Tammy Kimbrell testified that she was working at Jones Jewelry the day twelve rings were stolen. She stated that two men came into the store and "one kept me busy" by claiming to be looking for a gift for his girlfriend. Shortly after the two men left the store together, another mall patron informed Ms. Kimbrell that she saw someone reach into one of the jewelry cases. Ms. Kimbrell checked her displays and discovered that a tray containing twelve rings was missing. She immediately called the police and filed a report. Ms. Kimbrell gave physical descriptions of the two men to the police the day of the crime, but at trial she could not positively identify the Defendant as one of those men. Greg Swims, one of the owners of Jones Jewelry, testified that the value of the stolen rings was over $1,000. He also stated that eleven of the twelve rings had been recovered and returned to him.

Rick Wilbanks, the owner of the Diamond Gallery, testified that when the Defendant and Mr. Doss visited his store he was assisting another customer. He eventually spoke with the Defendant, showing him various items, but the two men left without making a purchase. While putting away his merchandise at the end of the day, Mr. Wilbanks discovered that three trays, containing a total of thirty-five rings, were missing. Mr. Wilbanks stated that the retail value of the rings was $17,881. Immediately after discovering the missing rings, Mr. Wilbanks reviewed his surveillance tape from the day, which showed Mr. Doss reach into the jewelry case and take the trays of rings out to the Defendant's Jeep in two separate trips. Mr. Wilbanks called the police, filed a report, and turned the surveillance tape over to investigators with the Dyersburg Police Department.

The owner of City Pawn Shop in Dyersburg, Bennie Patterson, testified that he received a call from the Dyersburg Police Department regarding the theft of jewelry on the day of the thefts. Mr. Patterson stated that only "a few minutes later" a woman he knew to be Crystal Custer entered his shop desiring to sell a couple of rings. Because the rings were new, Mr. Patterson became suspicious. He called the police and began to describe the rings over the phone. Mr. Patterson testified that as

he was talking to the police, Ms. Custer left the rings, exited the store, and drove off in a white Jeep driven by the Defendant, whom Mr. Patterson knew.

Officer Chris Hamm with the Criminal Investigation Division of the Dyersburg Police Department testified that he responded to the report of a theft at Jones Jewelry, and interviewed Ms. Kimbrell. After learning of the theft, he called several local pawn shops, including the City Pawn Shop, and warned the proprietors to be on the look-out for stolen rings. Shortly thereafter, Officer Hamm received Mr. Patterson's call regarding the suspicious rings. He interviewed Mr. Patterson, took possession of the two rings and transported them to Jones Jewelry for identification. However, the rings did not match those stolen from Jones Jewelry.

Officer Jim Joyner testified that he was called to respond to a report of theft from the Diamond Gallery on January 9, 2004. Officer Joyner was aware that Officer Hamm was investigating the earlier Jones Jewelry theft and had recovered rings from a pawn shop that had not been matched to that theft. Officer Joyner called Officer Hamm and asked him bring the rings to the Diamond Gallery. Mr. Wilbanks of the Diamond Gallery identified the rings recovered at the City Pawn Shop as belonging to his store.

Officer Hamm testified at trial that he identified the Defendant and Mr. Doss from the Diamond Gallery surveillance video, and immediately began looking for the two suspects. The Defendant's white Jeep was discovered parked in a hospital parking lot very near his mother's house. The police watched the Jeep and the house for several hours, hoping to find the two suspects. At one point, two individuals were seen looking out of the windows of the house. The police went and knocked on the door, but no one answered.

Officer Joyner testified that the Defendant's mother was called, and she eventually came and authorized the police to enter her home after arrest warrants for her son and Mr. Doss were presented. The police entered the house and discovered the Defendant hiding under a mattress, and Mr. Doss hiding in a shower. Both men were taken into custody, and were interviewed separately at the police station. Officer Hamm testified that the Defendant admitted he was with Mr. Doss when the rings were stolen, but maintained that he himself had nothing to do with taking the rings. The Defendant also informed the police that the remainder of the rings were hidden under the sink in the bathroom of his mother's house.

Ms. Crystal Custer testified that she knew Mr. Doss, and was a friend of the Defendant. She stated that on the date in question, Mr. Doss contacted her and asked her to help him pawn some rings because he did not have any state issued I.D. The Defendant and Mr. Doss picked her up and proceeded to drive to Missouri in the Defendant's Jeep, where she sold two rings at two different pawn shops, each time

giving the money to Mr. Doss. The group then returned to Dyersburg, where Ms. Custer pawned one more ring at a local pawn shop before going to the City Pawn Shop. Ms. Custer testified that when the attendant at the City Pawn Shop became suspicious and placed a call to whom she believed was the police, she left the store, went back to the Jeep and asked the Defendant and Mr. Doss if the rings were stolen. They confirmed that they were, but stated that they were stolen from a woman in Jackson. Ms. Custer then demanded that the Defendant drive her home, which he did.

Ms. Custer further testified that when the Defendant dropped her off at her house, he gave her four or five rings, and asked her to hold on to them for him, which she did. The next day, a Saturday, Ms. Custer was informed that the Defendant and Mr. Doss had been arrested for stealing rings from two local jewelry stores. Ms. Custer became very concerned and called the police, who came to her house and took the rings she was holding for the Defendant. The following Monday she went to the police station and gave a statement to investigators working on the case.

Ms. Custer also stated that after she had given the rings to the police, the Defendant, out on bail, came to visit her and asked for the rings. She told him she gave the rings to a friend for safe keeping. Ms. Custer further testified that the Defendant then told her that he "distracted" the store clerks while Mr. Doss took the rings, and the police did not have anything on him. He explained that because Mr. Doss already knew he was going to jail for violating his parole, he was going to take the full blame for the thefts.

On cross-examination, Ms. Custer admitted that she was originally charged, along with the Defendant and Mr. Doss, for her involvement in the incident, but made a deal to have her charges dropped if she would testify at the Defendant's trial. Ms. Custer also testified that she was currently on probation herself for a prior theft conviction.

The defense called one witness at trial, Jeremy Doss. Mr. Doss testified that he was currently serving a sentence with the Tennessee Department of Correction for parole violations and theft convictions related to the same incident for which the Defendant was being tried. According to Mr. Doss, he and the Defendant first visited several shops at the Dyersburg mall, including Jones Jewelry. The Defendant was shopping for a gift for his girlfriend. Mr. Doss stated that when he noticed one of the jewelry cases was open, he just took a tray of rings and carried it out to the Defendant's Jeep. After the two left Jones Jewelry, they drove to a pet store to look at puppies and feed the fish. After visiting the pet store, Mr. Doss stated they walked next door to the Diamond Gallery, where the Defendant continued shopping for a gift. When the store attendant walked to a back room, Mr. Doss took advantage of

-4-

the opportunity to steal three trays of rings, again taking them out to the Defendant's Jeep while the Defendant continued to shop for a gift.

Mr. Doss testified that he did not inform the Defendant about the rings stolen from either store until after the two were driving away from the Diamond Gallery. The two then went to the Defendant's mothers' house, where Mr. Doss hid most of the rings under the sink. The Defendant and Mr. Doss then picked up Ms. Custer and started pawning some of the rings. After two rings were left at the City Pawn Shop, the group picked up some drugs and then dropped Ms. Custer off at her house, where Mr. Doss claimed he gave Ms. Custer several rings as payment for her help in pawning the others. The two men then returned to the Defendant's mother's house where they drank alcohol, smoked marijuana and used cocaine until the police found and arrested them. Mr. Doss also stated that he never at any time gave any rings, or money obtained from selling the rings, to the Defendant. According to Mr. Doss, the only benefit the Defendant received from either theft was "maybe" some drugs purchased with money obtained from pawning a few of the rings.

On cross-examination, Mr. Doss could not explain why the surveillance video showed the two drive directly up to the front of the Diamond Gallery in the Defendant's Jeep and enter the store, considering he testified that they had walked to the Diamond Gallery from a nearby pet store. Mr. Doss also admitted that the two had been involved together in a prior criminal incident in 2000, where he had been convicted of theft of a car and the Defendant was convicted for joyriding. The Defendant elected not to testify.

State v. Brandon McCaslin, No. W2004-02539-CCA-R3-CD, 2005 Tenn. Crim. App. LEXIS 1029, *1-12, (Tenn. Crim. App., at Jackson, Sept. 6, 2005) (footnotes omitted), perm. to appeal denied (Tenn. Feb. 6, 2006).

## II. Post-Conviction Hearing

At the post-conviction hearing, Petitioner testified that trial counsel ignored his request that trial counsel challenge two prospective jurors during voir dire: Linda Capps, who was Ms. Custer's aunt and whose brother was a police officer in Jackson; and Judy Smith, who also knew Ms. Custer and whose ex-husband worked for the Dyersburg Police Department. Petitioner said that he also asked trial counsel to challenge prospective jurors Angie McDonald and Kimberly Johnson, but Petitioner could not remember the basis for his request. Petitioner said that trial counsel told him that "he had something planned or was going to do something."

Petitioner contended that trial counsel's performance was deficient because he failed to object to the State's cross-examination of Mr. Doss about his prior convictions of theft, one of which involved Petitioner as a co-defendant. The line of questioning was prompted after Mr. Doss equivocated as to whether Petitioner knew Mr. Doss had been convicted of theft offenses prior to

-5-

the charged offenses. Petitioner said that trial counsel's assistance was also ineffective when he refused the trial court's offer of a limiting instruction concerning the jury's consideration of the proof of Petitioner's prior conviction.

Petitioner testified that trial counsel misled the jury during opening statement when he promised the jury that they would hear testimony that both Petitioner and his mother, Wanda Townsend, directed Mr. Doss to return the stolen jewelry. Petitioner acknowledged that there was no evidence that Ms. Townsend knew anything about the jewelry. Petitioner stated, however, that the State called Ms. Townsend as a rebuttal witness, but trial counsel chose not to cross-examine her. Petitioner stated that the prosecutor was able to capitalize on the missing testimony, during closing argument, to Petitioner's detriment.

Petitioner stated that he met with trial counsel once before trial. Petitioner told trial counsel that he wanted to call Ms. Townsend and Mr. Doss as defense witnesses. Petitioner did not know whether trial counsel interviewed any of the State's witnesses. Petitioner said that trial counsel did not review the surveillance tape from Jones Jewelry, and Petitioner did not know whether he reviewed the surveillance tape from Diamond Gallery, but said that trial counsel "probably" did not review the tape.

On cross-examination, Petitioner said that he wanted to call Mr. Doss as a witness to support Petitioner's defense that he did not know that Mr. Doss stole the jewelry while Petitioner was shopping for a pendant. Petitioner could not remember why he wanted trial counsel to call Ms. Townsend as a defense witness and acknowledged that the State subpoenaed her to testify. Petitioner acknowledged that trial counsel presented his defense as Petitioner requested. Petitioner also confirmed that each of the four jurors whom Petitioner felt should have been removed from the prospective jury panel testified that they could be "fair and impartial."

Ms. Townsend testified at the post-conviction hearing that she was subpoenaed by the State to testify at trial. Ms. Townsend stated that she was not asked whether she knew about the stolen jewelry or whether she had told Mr. Doss to return the jewelry. Ms. Townsend confirmed that she testified that she had not seen Mr. Doss with Petitioner after the offenses were committed. Ms. Townsend stated that she heard Petitioner ask trial counsel to remove Ms. Capps from the prospective jury panel "more than once."

District Attorney General Phil Bivens testified that trial counsel did not object when General Bivens began to cross-examine Mr. Doss about his prior theft convictions. General Bivens confirmed that the sole issue on direct appeal was the sufficiency of the convicting evidence.

Trial counsel testified that he had been practicing law "a real long time." Trial counsel said that he did not recollect Petitioner requesting him to challenge any of the prospective jurors. Trial counsel said that he did not recall Mr. Doss telling him that he and Petitioner had been convicted of a prior theft charge as co-defendants when he interviewed Mr. Doss prior to trial.

On cross-examination, trial counsel stated that Petitioner's defense was that he did not know Mr. Doss had stolen the jewelry while Petitioner was with him. Trial counsel stated that the surveillance videos from two jewelry stores showed that Mr. Doss was the one who removed the jewelry from the display cases. Trial counsel said that he was aware that Ms. Custer had a prior theft conviction and a "poor" reputation in the community for telling the truth. Although he had no present recollection of doing so, trial counsel was sure that he discussed with Petitioner Ms. Capp's and Ms. Smith's relationship with Ms. Custer. Trial counsel stated that if he did not challenge a particular prospective juror, he had a reason for doing so.

## III. Standard of Review

A petitioner seeking post-conviction relief must establish his allegations by clear and convincing evidence. T.C.A. § 40-30-110(f). However, the trial court's application of the law to the facts is reviewed de novo, without a presumption of correctness. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to de novo review. Id.; State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must establish that counsel's performance fell below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he must show that counsel's ineffective performance actually adversely impacted his defense. Strickland v. Washington, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. Id. at 690, 104 S. Ct. at 2066.

A petitioner must satisfy both prongs of the Strickland test before he or she may prevail on a claim of ineffective assistance of counsel. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. Id. Failure to satisfy either prong will result in the denial of relief. Id. Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.

## IV. Prospective Jurors

Petitioner argues that trial counsel's assistance was ineffective in not exercising a peremptory challenge or challenging for cause prospective jurors Capps, Smith, McDonald, and Johnson. Ms.

Capps disclosed during voir dire that she was Ms. Custer's aunt. In response to both trial counsel's and the prosecutor's questions, however, Ms. Capps said that her relationship with Ms. Custer would not cause her to evaluate Ms. Custer's testimony any differently than the other witnesses. Ms. Smith disclosed that Ms. Custer was a friend of her step-daughter, but Ms. Smith stated that she herself did not have a personal relationship with Ms. Custer.

In response to trial counsel's questioning during voir dire, both Ms. Smith and Ms. Capps disclosed that they knew people in the police force. Ms. Smith stated that her ex-husband was a member of the Dyersburg Police Department, but that her ex-husband had never discussed his work with her while they were married. Ms. Capps stated that her brother's occupation as a police officer with the Jackson Police Department would not affect her ability to be fair and impartial.

At the post-conviction hearing, Petitioner did not present any basis for the exclusion of prospective jurors Kimberly Johnson and Angie McDonald other than Petitioner's recollection that he requested trial counsel to exercise a peremptory challenge as to these jurors. Nonetheless, we glean from the record that the State exercised a peremptory challenge to remove prospective juror Johnson who, according to the voir dire knew Petitioner, his mother, his grandparents, and Bennie Patterson, the owner of City Pawn Shop. We also glean from the record that prospective juror McDonald also knew Mr. Patterson, but she stated that this acquaintance would not affect her ability to be fair and impartial.

Petitioner did not call Jurors McDonald, Capps, and Smith to testify at the post-conviction hearing concerning their relationship with the State's witnesses. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (concluding that failure to present a material witness at the post-conviction hearing generally results in the failure to establish ineffective assistance of counsel). Moreover, Petitioner has not pointed to any portion of the record indicating the biased character of any of the challenged jurors. The post-conviction court accredited trial counsel's testimony that he allowed Ms. Smith and Ms. Capps to remain in the jury pool as a matter of trial strategy, and the court also found that Petitioner had failed to establish that he was prejudiced by trial counsel's decision. Based on our review, we conclude that the evidence does not preponderate against the trial court's finding that trial counsel's assistance was not ineffective in this regard. Petitioner is not entitled to relief on this issue.

## V. Evidence of Prior Convictions

Petitioner argues that trial counsel was ineffective for failing to object to the State's cross-examination of Mr. Doss concerning Mr. Doss's prior theft offense in which Petitioner was charged as a co-defendant. On direct examination, Mr. Doss testified that he stole the jewelry at both locations while Petitioner was being assisted by sales clerks, and that he first showed the stolen jewelry to Petitioner as they were driving to Petitioner's mother's house. During cross-examination, Mr. Doss testified that he and Petitioner were "good friends," that they "hung out" together, and that they had known each other approximately seven years. The following colloquy then occurred:

| [THE STATE]: | Does [Petitioner] know you were a thief? |
| --- | --- |
| [MR. DOSS]: | No, sir, I don't – |
| THE STATE: | Okay. |
| MR. DOSS: | – I don't guess, you know, I mean, I know he knows I stole before, but – |
| THE STATE: | May we approach, Your Honor? |

A bench conference was held in the presence but out of the hearing of the jury. The State explained, "Your Honor, these two were co-defendants. These two were co-defendants in two thefts and convicted of a theft of a car in 2000 and he's denying it now."

Trial counsel did not object to the State's proposed line of questioning, and the State was allowed to proceed. Mr. Doss subsequently acknowledged that he and Petitioner were charged as co-defendants in the theft of a car in 2000, after which Mr. Doss entered a plea of guilty to the charged offense, and Petitioner entered a plea of guilty to the offense of unauthorized use of an automobile.

Petitioner contends that any relevance of the testimony concerning Petitioner's prior conviction was outweighed by its prejudicial effect, and trial counsel should have objected to the proposed testimony pursuant to Rule 404(b) of the Tennessee Rules of Evidence. Rule 404(b) states that evidence of "other crimes, wrongs or acts is not admissible to prove the character of a person or to show action in conformity with the character trait" but that such evidence "may . . . be admissible for other purposes." "Other purposes" have been defined to include: (1) motive; (2) intent; (3) guilty knowledge; (4) identity of the defendant; (5) absence of mistake or accident; (6) a common scheme or plan; (7) completion of the story; (8) opportunity; and (9) preparation. State v. Berry, 141 S.W.3d 549, 582 (Tenn. 2004).

Petitioner's theory of defense, as presented through Mr. Doss's testimony, was that he had no knowledge that Mr. Doss stole the jewelry until after the commission of the offenses and thus did not knowingly obtain property of another without consent. Mr. Doss testified that he and Petitioner had been friends for approximately seven years, but he equivocated about Petitioner's knowledge of whether Mr. Doss had committed theft offenses in the past. The State argues that the prosecutor's questions concerning Mr. Doss's prior theft conviction in which Petitioner was charged as a co-defendant was relevant to show an absence of mistake or accident on Petitioner's part under Rule 404(b). The post-conviction court found that there was no basis for an objection to the introduction of the testimony concerning Petitioner's prior conviction. The evidence was not offered to show that the charged offense conformed with Petitioner's prior activities which led to an unauthorized use of automobile conviction, but to rebut Petitioner's claim that despite his long friendship with Mr. Doss, he was unaware of Mr. Doss's propensity to steal. We conclude that the evidence does not

preponderate against the post-conviction court's finding that trial counsel's assistance was not deficient in this regard.

Moreover, Petitioner has failed to establish that he was prejudiced by the line of questioning. Petitioner was charged with knowingly exercising control over property without the owner's effective consent under a theory of criminal responsibility.  See T.C.A. §§ 39-11-402; 39-14-103.  Thus, notwithstanding Petitioner's theory of defense that he did not know Mr. Doss stole the jewelry while they were shopping in the two jewelry stores, the evidence was overwhelming that Petitioner later found out that the jewelry was stolen and that he nonetheless drove Mr. Doss and Ms. Custer to several pawn shops in Missouri and Tennessee to dispose of the property.  Petitioner has failed to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.

Petitioner also challenges trial counsel's decision not to request a limiting instruction that evidence of Petitioner's prior conviction could only be used to impeach Mr. Doss, and not as substantive proof that Petitioner committed the charged offense.  At the conclusion of closing argument, the following colloquy occurred:

| [TRIAL COURT]: | I don't know whether to read this charge or not. [Petitioner] didn't testify but there is some proof of -- |
| --- | --- |
| DEFENSE COUNSEL: | I wouldn't ask for [it] because I think it draws their attention . . . . |
| TRIAL COURT: | It's up to you [defense counsel], if you want it charged, I'll charge it, if you do not want it charged, I will not charge it. |
| DEFENSE COUNSEL: | I don't want it charged. |

This Court is constrained not to second-guess the tactical and strategic choices made by trial counsel absent a showing that those decisions were uninformed due to inadequate preparation. Hellard, 629 S.W.2d at 9.  Trial counsel's alleged errors are judged at the time they were made in light of the facts and circumstances then existing.  Strickland, 466 U.S. at 690, 104 S. Ct. at 2066.  In the instant case, trial counsel considered his approach and decided not to request a limiting instruction in order not to call attention to the exchange about Petitioner's prior conviction for the unauthorized used of a vehicle as a matter of trial strategy.  We will not, with the benefit of hindsight, second-guess trial counsel's decision. Petitioner is not entitled to relief on this issue.

## VI. Promises During Opening Argument

Petitioner argues that trial counsel's assistance was ineffective because he made promises to the jury during opening argument which were not fulfilled during the trial.  Specifically, trial counsel

argued that the proof would show that Petitioner did not know the jewelry had been stolen until Mr. Doss and Petitioner were driving home, and that Mr. Doss would testify that Petitioner had no idea the jewelry was stolen. Trial counsel then stated:

> Now the proof is gonna [sic] show that they did ride around and they did go over to [Petitioner's] mother's house. On the way over there[,] that is when Mr. Doss tells him . . . I have stolen the rings. Now at that point proof is also gonna show that both [Petitioner] and his mother told [Mr. Doss] he needed to take them back.

Although Mr. Doss testified on direct examination that Ms. Townsend was home when he and Petitioner returned from the mall, Mr. Doss stated that he did not show the jewelry to Ms. Townsend nor did either he or Petitioner tell Ms. Townsend what Mr. Doss had done. Ms. Townsend was subsequently called as a rebuttal witness and testified that she did not see Mr. Doss on the day the offenses were committed and knew nothing about the offenses.

Based on this testimony, trial counsel reasonably decided not to pursue whether Ms. Townsend told Mr. Doss to return the jewelry. The primary thrust of trial counsel's opening argument was to outline Petitioner's theory of defense, that is, that he did not know Mr. Doss stole the jewelry until after the offenses were committed. The post-conviction court found that "Mr. Doss did so testify and there was nothing about trial counsel's opening statement which could conceivably change the outcome of the trial." We conclude that the evidence does not preponderate against the post-conviction court's finding that, even if such statements were deficient, Petitioner failed to establish that he was prejudiced by trial counsel's opening statement. Petitioner is not entitled to relief on this issue.

## VII. Appellate Issues

Petitioner contends that trial counsel was ineffective for failing to preserve or raise issues on appeal other than the sufficiency of the convicting evidence. These issues include the familial and personal relationship of certain jurors with the State's witnesses; the disclosure to the jury of Petitioner's prior conviction for unauthorized use of an automobile; and trial counsel's statement during opening argument that evidence would show that Petitioner and Ms. Townsend told Mr. Doss to take the rings back.

The same principles apply in determining the effectiveness of both trial and appellate counsel. Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995). A petitioner alleging ineffective assistance of appellate counsel must prove both that (1) appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and (2) absent appellate counsel's deficient performance, there was a reasonable probability that the petitioner's appeal would have been successful before the state's highest court. See, e.g., Smith v. Robbins, 528 U.S. 259, 285, 120 S. Ct. 746, 764 (2000); Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001); Mayo v. Henderson, 13 F.3d 528, 533-34 (2d Cir. 1994).

We have already concluded that Petitioner has failed to establish that he was prejudiced by trial counsel's strategic decision not to challenge prospective jurors Capps, Smith, and McDonald, or by his failure to object to the line of questioning about Petitioner's prior conviction. We have also concluded that Petitioner failed to show that he was prejudiced by trial counsel's opening statement, or that his trial counsel's assistance was deficient in this regard. Based on our review, we conclude that Petitioner has failed to show that the results of his appeal would have been any different had trial counsel raised these issues on appeal. Petitioner is not entitled to relief on this issue.

## VIII. Failure to Prepare for Trial

Petitioner argues that his trial counsel's assistance was deficient because he failed to meet with Petitioner more than one time. Petitioner contended at the post-conviction hearing that trial counsel to his knowledge never interviewed any witness, filed any motions, or reviewed the jewelry stores' surveillance tapes. Petitioner presented no evidence at the post-conviction hearing other than his testimony as to trial counsel's lack of pre-trial preparation. The post-conviction court specifically credited trial counsel's testimony that he viewed both surveillance videos and that he presented the theory of defense Petitioner had requested. Based on our review, we conclude that Petitioner has failed to show that trial counsel's assistance fell below acceptable standards or that Petitioner was prejudiced by any aspect of his trial counsel's assistance. Petitioner is not entitled to relief on this issue.

### CONCLUSION

After a thorough review, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE

-12-